IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff<br><br>vs.<br><br>ZERO STAGE CAPITAL VI, LP,<br>Defendant | 05-CV-10887-JLT |

## PROOF OF CLAIM

1. Claimant is The Beacon Mutual Insurance Company ("Beacon"). The full address of Beacon is One Beacon Centre, Warwick, Rhode Island. Beacon's telephone number is (401)825-2667.

2. Beacon is an investor in Zero Stage Capital VI Limited Partnership (the "Defendant") pursuant to the Subscription Agreement dated July 13, 1998 (the "Agreement").

3. The amount of Beacon's investment under the Agreement was One Million Dollars ($1,000,000.00).

4. No judgment has been rendered on this Claim.

5. The amount of all payments made by the Defendant have been credited and deducted for the purpose of making this Claim.

6. This Proof of Claim is not subject to set-off or counterclaim.

> THE BEACON MUTUAL INSURANCE COMPANY
>
> By its Attorneys,
>
> PARTRIDGE SNOW & HAHN LLP
>
> /s/ Charles A. Lovell
> Charles A. Lovell (Bar No. 4004)
> 180 South Main Street
> Providence, RI 02903
> (401)861-8200/FAX(401)861-8210
> cal@psh.com

Dated: January 9, 2006

- 2 -

## CERTIFICATE OF SERVICE

        I hereby certify that on the 9th day of January, 2006, electronically filed a Proof of Claim. I further hereby certify that upon receipt of the notice of electronic service of the Proof of Claim, a copy of said document will be served by first class mail, postage prepaid, to any of the parties listed below not noted as having received electronic service, said service being made on the 9th day of January, 2006.

| | |
|---|---|
| Thomas W. Rigby, Esquire<br>U.S. Small Business Administration<br>409 Third Street, Seventh Floor<br>Washington, D.C. 20416<br>**Counsel for Plaintiff** | Rayford A. Farquhar, Esquire<br>Assistant U.S. Attorney<br>U.S. Attorney's Office, Dist. of Massachusetts<br>One Courthouse Way, Suite 9200<br>Boston, MA 02110 |
| Robert M. Duffy, Esquire<br>Duffy & Sweeney<br>One Turks Head Place<br>Providence, RI 02903<br>**Counsel for U.S. Small Business Administration** | Zero State Capital VI, LP<br>101 Main Street, 17th Floor<br>Cambridge, MA 02142<br>**Defendant** |

        /s/ Debra J. Demartini

834003_1/1222-1

# ZERO STAGE CAPITAL VI LIMITED PARTNERSHIP

## SUBSCRIPTION AGREEMENT

ZERO STAGE CAPITAL VI LIMITED PARTNERSHIP
c/o Zero Stage Capital Associates VI, LLC
101 Main Street
Cambridge, Massachusetts 02142

Ladies and Gentlemen:

1. <u>Subscription for Units</u>

The undersigned (the "Investor") hereby subscribes for the number of units of limited partnership interest (the "Units") set forth on the signature page below in ZERO STAGE CAPITAL VI LIMITED PARTNERSHIP, a Massachusetts limited partnership (the "Partnership"), at a price of $100,000 per Unit. Enclosed is a check payable to Zero Stage Capital VI Limited Partnership in the amount equal to 25% of the total purchase price of the Units subscribed for. The Investor agrees to pay the balance of the purchase price in additional installments in accordance with the provisions of the Agreement of Limited Partnership (the "Partnership Agreement") of the Partnership. The Investor understands that such first installment will be held until the closing of the sale of such Units in an interest bearing bank account. The Investor further understands that the payment made by the Investor with this Subscription Agreement will be returned promptly to the Investor, and this subscription shall be deemed to be rejected, in the event that investors purchasing at least 100 Units have not been admitted to the Partnership on or before September 30, 1998, which date may be extended at the election of the general partner of the Partnership (the "General Partner") to a date no later than March 31, 1999 (the "Offering Termination Date"). The Investor hereby specifically accepts and adopts each and every provision of the Partnership Agreement and agrees to be bound thereby, including, without limitation, the power of attorney contained in Section 8.03 thereof.

2. <u>Certain Understandings of the Investor</u>

The Investor understands that:

(1) This subscription may be accepted or rejected in whole or in part by the General Partner, in its sole and absolute discretion;

(2) This subscription is and shall be irrevocable, except that the Investor shall have no obligation hereunder in the event that this subscription is for any reason rejected, the offering of Units is for any reason canceled or the closing of the offering does not occur prior to the Offering Termination Date;

(3)  No federal or state agency has made any finding or determination as to the fairness of this offering nor any recommendation or endorsement of the Units; and

(4)  It is not anticipated that there will be any market for the Units, and that, as a result, the Investor must be prepared to bear the economic risk of his investment for an indefinite period of time.

IN MAKING AN INVESTMENT DECISION INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE PERSON OR ENTITY CREATING THE SECURITIES AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THESE SECURITIES HAVE NOT BEEN RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM. INVESTORS SHOULD BE AWARE THAT THEY WILL BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

3.  Representations and Warranties of the Investor

The Investor hereby represents and warrants to the Partnership that:

(1)  The Investor is acquiring the Units for its own account for investment, and not with a view to, or for sale in connection with, any distribution of the Units. The Investor agrees to be bound by all of the terms and provisions of the Partnership Agreement including the provisions thereof which prohibit a sale, transfer, assignment, pledge or other disposition of any Unit or any part thereof or interest therein without the prior written consent of the General Partner. The Investor understands that the Units will not be registered under the Securities Act of 1933, as amended ("the "Act"), and that the Units may not be transferred unless they are registered under the Act and under applicable state securities laws, or unless an exemption therefrom is available.

(2)  The Investor has carefully read the Partnership Agreement. The Partnership has made available to the Investor all documents that the Investor has requested relating to an investment in the Partnership and has provided answers to all of the Investor's questions concerning this offering. In evaluating the suitability of an investment in the Partnership, the Investor has not relied upon any representations or other information (whether oral or written) other than as set forth in the Partnership's Confidential Private Placement Memorandum dated December 1997, as supplemented June 1998 (as so supplemented to date, the "Memorandum"), including the exhibits thereto, or

-2-

other information contained in any documents or answers to questions so furnished to the Investor by or on behalf of the Partnership. In addition, the Investor acknowledges that the General Partner made available to the Investor the opportunity to ask questions and receive answers concerning the terms and conditions of this offering of the Units

(3)     The Investor recognizes that investment in the Partnership involves substantial risks, including tax risks, and has taken full cognizance of and understands all of the risk factors related to the purchase of the Units, including those set forth under the captions "Risk Factors" and "United States Tax Status" in the Memorandum.

(4)     The Investor is an "accredited investor" as that term is defined in 501 of Regulation D of the rules and regulations promulgated under the Act.

(5)     The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of an investment in the Partnership and of making an informed investment decision.

(6)     The Investor acknowledges that the execution, delivery and performance of this Subscription Agreement, the Investor Questionnaire provided by the Investor to the Partnership (the "Investor Questionnaire") and the Partnership Agreement by the undersigned has been duly authorized by all necessary actions of the undersigned, and such agreements constitute the valid, binding and enforceable obligations of the undersigned (except as enforcement of the same may be subject to the application of federal or state bankruptcy, insolvency, reorganization or moratorium laws or other laws affecting the rights of creditors generally).

(7)     The Investor ratifies and confirms the accuracy of all information provided to the Partnership in this Subscription Agreement and the Investor Questionnaire.

4.     Certain Representations Required to be Provided to the SBA

The Investor is aware that the Partnership is required to make certain representations regarding the undersigned and the Partnership to the Small Business Administration (the "SBA") in order for the Partnership to obtain a license as a Small Business Investment Company ("SBIC") under the Small Business Investment Company Act of 1958, as amended (the "SBIC Act"). In connection therewith, Investor hereby represents and warrants to the Partnership as follows (and acknowledges that the Partnership intends to rely on the following representations):

A.     Institutional Investor Status. The Investor is an "Institutional Investor" (as defined below).

\_\_\_\_X\_\_\_\_     Yes          _____     No

As used herein, the term "Institutional Investor" means (a) any of the following classes of Entities if it has a net worth of not less than $1 million, or (b) any of the following classes of individuals, provided they are permanent residents of the United States or, if not, have appointed an agent for service of process:

**(Please check all categories which are applicable)**

*Entities*:

| | |
|---|---|
| _____ | Any state or national bank, trust company, savings bank, or savings and loan association, including any such institution investing the funds of others in a fiduciary capacity, or a holding company of any of the foregoing. |
| __X__ | Any insurance company, or a holding company of any insurance company. |
| _____ | Any Investment Company or Business Development Company, as defined in the Investment Company Act of 1940, as amended, or a holding company of any of the foregoing. |
| _____ | Any employment benefit or pension plan established for the benefit of employees of the Federal government or any state, their political subdivisions or any agency or instrumentality thereof. |
| _____ | Any employee benefit or pension plan, as defined in the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). |
| _____ | Any trust, foundation, or endowment exempt from Federal income taxation under the Internal Revenue Code, as amended (the "Code"). |
| __X__ | Any corporation, partnership or other entity with a net worth in excess of $10,000,000. |
| _____ | Any state, its respective political subdivisions, or any agency or instrumentality thereof. |
| _____ | Any entity whose primary purpose is to manage and invest non-Federal funds on behalf of any of the foregoing types of Institutional Investors. |

*Individuals*:

| | |
|---|---|
| _____ | Any individual who is an Accredited Investor as defined in the Securities Act of 1933, as amended, and whose capital contribution commitment to the Partnership is backed by a letter of credit from a state or national bank acceptable to the SBA. |

-4-

_____      Any individual whose personal net worth (exclusive of the value of his or her most valuable residence) is equal to not less than $2 million and not less than ten times the total purchase price of the Units in the Partnership subscribed for by such individual.

_____      Any individual whose personal net worth (exclusive of the value of any equity in his or her most valuable residence) equals or exceeds $10 million.

B.   Net Worth Requirement. If the Investor is an Institutional Investor with a net worth of less than $10 million, the total purchase price of the Units subscribed for does not exceed 10% of the Investor's net worth. (Please check applicable response.)

_____ Yes            _____ No

C.   Permanent Resident Status. If the Investor is an individual, the undersigned is a permanent resident of the United States.

D.   Qualified Nonprivate Funds. The Investor has obtained the funds to be used to purchase Units in the Partnership from any Federal, state or local government, or agency or instrumentality thereof.

_____ Yes            ___X_____ No

If the Investor indicated "Yes" above, such funds constitute "qualified nonprivate funds" (as defined below).

_____ Yes            _____ No

If the Investor indicated "Yes" above, such funds are "qualified nonprivate funds" because they fall within the category marked below:

_____      Funds directly or indirectly invested by any Federal agency pursuant to a statute enacted after September 4, 1992, explicitly mandating the inclusion of such funds in "Private Capital."

_____      Funds invested by any state or local government entity, including the amount of any guarantee extended by such entity.

E.    10% Limited Partner. If the Investor's agreed upon capital contribution to the Partnership will represent 10% or more of the total agreed-upon capital contributions of all Private Limited Partners to the Partnership, the agreed-upon capital contribution of the undersigned to the Partnership does not exceed 5% of the undersigned's net worth.

___N/A___    Yes    _____    No

5.    Investment Company Act of 1940

The Investor hereby represents and warrants to the Partnership that:

(1)    If the Investor is a corporation, trust, partnership or other organization and its agreed-upon capital contribution to the Partnership will represent 10% or more of the total agreed-upon capital contributions to the Partnership, either:

(x)    the value of all securities of "excluded companies" (defined below) owned by the Investor as of the date of the closing, including the undersigned's interest in the Partnership, will not exceed 10% of the value of the undersigned's total assets; or

(y)    the Investor is a pension trust (or a nominee therefor) which holds the assets of an involuntary, noncontributory employee defined benefit plan, as that term is used in correspondence between the Kodak Retirement Income Plan (available February 28, 1988) CCH (1987-1988 Transfer Binder) Fed. Sec. L. Rep. ¶ 78,686, and in SEC Release No. 33-6188 (February 1, 1980) 17 C.F.R. 231.6188.

An "excluded company" is an "investment company," as the term "investment company" is defined in Section 3(a) of the Investment Company Act of 1940, which is excluded from such definition solely because (a) there are fewer than 100 beneficial owners of its securities and it does not presently propose to make a public offering of its securities, or (b) its outstanding securities are owned exclusively by "qualified purchasers," as defined in Section 2(a)(51)(A) of the Investment Company Act of 1940 or any rule adopted thereunder, and it does not presently propose to make a public offering of its securities.

(2)    If the Investor is a pension plan or trust, no participant in the Investor has the right or obligation to allocate such participant's plan account assets among various investment alternatives.

6.    Agreement to Update Information

The Investor hereby agrees that, prior to the date on which all installments of the purchase price of the Units subscribed for have been paid in full to the Partnership, it will give promptly notice of any change in the Investor's financial condition or status, that causes the information described herein to be incorrect.

-6-

7. <u>Power of Attorney</u>

The Investor has agreed to become a Limited Partner in the Partnership pursuant to the terms of the Partnership Agreement. To effectuate such admission and to facilitate operation of the Partnership's business, the Investor intends to grant a power of attorney to the persons, and for the purposes, set forth below, which power of attorney is in addition to the powers of attorney granted in Sections 2.01, 2.02 and 8.03 of the Partnership Agreement. The Investor hereby irrevocably constitutes and appoints the General Partner, Gordon B. Baty, Paul M. Kelley and Stanley L. Fung and each of the foregoing acting singly (the "Attorneys"), in each case with full power of substitution, the true and lawful attorney-in-fact of the Investor, in each case with full power and authority in his name, place and stead, to make, execute, verify, consent to, swear to, make oath as to, acknowledge, publish, record and file all of the following:

(1) The Partnership Agreement (with such nonmaterial modifications therein from the draft provided to the Investor as any of said Attorneys deems necessary or appropriate) or any amendment thereto and any other agreements, certificates, consents or other instruments said Attorneys, or any of them, deem necessary or appropriate for the purpose of admitting the Investor as a Limited Partner of the Partnership, to give effect to the provisions of the Partnership Agreement and to preserve the character of the Partnership as a limited partnership, the execution and delivery by any of said Attorneys of any such amendment, agreement, certificate, consent or other instrument being conclusive evidence that said execution and delivery was authorized hereby;

(2) Any other certificate, consent, or other instrument which may be required to be filed by the Partnership or its Partners to organize or qualify the Partnership as a limited partnership under the laws of any state or other jurisdiction, if the Attorneys, or any of them, deem such filing necessary or desirable, the execution and delivery by any of said Attorneys of any such certificate, consent or instrument being conclusive evidence that said execution and delivery was authorized hereby;

(3) Any and all amendments to or modifications of the instruments described in subparagraphs (1) or (2) hereof, including, without limitation, amendments of the Partnership Agreement necessary to effect the addition or substitution of one or more Limited Partners or General Partners pursuant to the Partnership Agreement, provided, that each such amendment of the Partnership Agreement is adopted in accordance with the terms thereof, the execution and delivery by said Attorneys, or any of them, of any such amendment or modification being conclusive evidence that such execution and delivery was authorized hereby; and

(4) Any and all certificates and other instruments which may be required to effectuate the dissolution and termination of the Partnership pursuant to and in accordance with the provisions of the Partnership Agreement;

-7-

*provided, however,* that the Power of Attorney set forth herein shall not empower the Attorneys, or any of them, to execute any instrument or other document which increases the liability of the Investor beyond the liability contemplated by this Subscription Agreement and the Partnership Agreement or which, except as contemplated by the Partnership Agreement, reduces the pro rata share in distributions of cash, securities and non-cash items or allocations of profits and losses from the Partnership without the prior written consent of the Investor.

The Investor acknowledges that each other Limited Partner of the Partnership has executed a Power of Attorney substantially in the form of this instrument, and that the General Partner and each Limited Partner will rely on the effectiveness of such Powers of Attorney for the orderly administration of the Partnership's affairs.

It is expressly understood and intended by the Investor that the Power of Attorney hereby granted is coupled with an interest and irrevocable. Said Power of Attorney shall survive the death, disability or incapacity of the Investor, or if the Investor is a partnership, corporation, trust or other entity, the dissolution, liquidation or termination thereof, or the assignment of the Investor's limited partnership interest or any part thereof. If the Investor transfers his limited partnership interest, the Power of Attorney granted hereby shall remain in effect for the purpose of and for the length of time necessary to effectuate and complete such transfer.

This Subscription Agreement shall become a binding Agreement between the Investor and the Partnership upon its execution and delivery by both parties.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement as of the date set forth below.

Number of Units subscribed for: _____10_____

Total Price of Units  
subscribed for ($100,000 per Unit): $1,000,000

Amount  
($25,000 per Unit): $250,000  
$100,000

Enclosed

NOTE: AN INDIVIDUAL INVESTOR MUST SUBSCRIBE FOR AT LEAST TWO UNITS AND A CORPORATE OR OTHER INSTITUTIONAL INVESTOR MUST SUBSCRIBE FOR AT LEAST TEN UNITS, UNLESS THE GENERAL PARTNER, IN ITS SOLE DISCRETION, AGREES TO ACCEPT A SUBSCRIPTION FOR A SMALLER NUMBER OF UNITS.

The Beacon Mutual Insurance Company  
Investor's Name (please type or print)

_[signature]_  
Investor's Signature Title:  
Donald G. Vass, President & CEO  
Title: President & CEO  
(for corporations, partnerships, trusts or other entities)

Dated: 7/13, 1998

Taxpayer Identification or  
Social Security Number: _____

Business Address:

1600 Division Road  
West Warwick, RI 02893

Mailing Address (if Different from Business Address):

_____  
_____  
_____

SUBSCRIPTION AGREED TO AND ACCEPTED:

ZERO STAGE CAPITAL VI LIMITED PARTNERSHIP

By:  Zero Stage Capital Associates VI, LLC  
     General Partner

By: _____          Date: _____, 1998  
      Manager

-9-