**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | **CIVIL CASE NO. 05-10887-JLT** |
| **Plaintiff,** ) | |
| ) | **HON. Joseph L. TAURO** |
| **v.** ) | |
| **ZERO STAGE CAPITAL VI, L.P.** ) | |
| **Defendant.** ) | |

_____)

**RECEIVER'S MEMORANDUM IN SUPPORT OF**
**RECEIVER'S MOTION FOR ENTRY OF AN ORDER APPROVING**
**THE RECOMMENDATION FOR DISPOSITION OF CLAIMS**
**RECEIVED IN RESPONSE TO CLAIMS BAR DATE**

The United States Small Business Administration ("SBA"), as Receiver ("Receiver") for

Zero Stage Capital VI, L.P. ("Zero Stage VI"), hereby moves this Court for entry of the

[proposed] Order filed simultaneously herewith approving and confirming the Receiver's

Recommendation for Disposition of Claims Received in Response to the Claims Bar Date

("Notice of Recommended Disposition"), which is submitted simultaneously herewith, and

adopting the Receiver's recommendations for the disposition of claims received.

**I.     FACTS**

The Receiver was appointed by an Order of this Court dated May 4, 2005 (the

"Receivership Order") and was charged, among other things, with "marshaling and liquidating all

of Zero Stage VI's assets and satisfying the claims of creditors therefrom in the order of priority

as determined by this Court."  Receivership Order, ¶ 1.  This Court entered its Order Approving

the Form and Manner of Notice to Claimants and Establishing a Claims Bar Date

(the "Bar Date Order"), dated November 4, 2005, which directed the Receiver for Zero

Stage VI to solicit claims against Zero Stage VI, the receivership estate, and assets or

funds in the possession of the Receiver.  The Bar Date Order required all claims to be submitted to the Principal Agent for the Receiver by the Claims Bar Date that was established as of January 20, 2006.

In accordance with Paragraph 2 of the Bar Date Order, the Receiver served Notice of the claims bar date via U. S. mail, postage prepaid to all persons or entities, other than the U.S. Small Business Administration, which the Receiver had reason to believe were creditors, agents, former directors or officers, shareholders, employees, partners, participant investors or lenders with Zero Stage VI, portfolio concerns of Zero Stage VI, and to any other persons or entities who had, during the term of the receivership, asserted a claim against Zero Stage VI, the receivership estate, or assets or funds in the possession of the Receiver.  The Notice was published pursuant to Paragraph 3 of the Bar Date Order once each week for two weeks in <u>The Boston Herald</u>, a newspaper of general circulation in Massachusetts.

As noted and addressed in the Receiver's Notice of Recommended Disposition filed herewith, twenty (20) claims were received by the Receiver in response to the mailed and published notices.  The Receiver's recommendation for the disposition of the claims, and its reasons in support of its recommendations, are set forth in the Notice of Recommended Disposition.

As more fully explained in the Receiver's Notice of Recommended Disposition filed herewith, the Receiver is recommending the payment of the administrative expenses of the Receivership first.  After payment of these administrative expenses in full, should additional funds be available, the Receiver's recommendation sets forth a priority of payment for allowed claims.

II.    **DISCUSSION**

A.    **Procedure for Resolving Claims**

Congress has expressly given this Court the power to take exclusive jurisdiction of all of the assets of Zero Stage VI and to appoint a receiver to administer them under

the direction of the Court.  15 U.S.C. § 687c.  In accordance with Paragraph 1 of the Receivership Order and Paragraph 7 of the Bar Date Order, the Receiver is filing herewith its Notice of Recommended Disposition of the claims filed, and its recommendation for a summary procedure whereby those claimants who oppose the Receiver's recommendation are authorized to file Motions in opposition.

The basis for the Receiver's recommendation for each claim is set forth in the Notice of Recommended Disposition filed herewith.  The authority of this Court to set the proposed procedures is well grounded in receivership practice.  Guaranty Trust Co. v. Williamsport Wire Rope Co., 19 F. Supp. 482, 483 - 84 (M.D. Pa. 1937) (establishing a claims bar date and affirming jurisdiction of receivership court to determine all claims); see also Clark: Law of Receivers, §§ 650, 651 (3rd ed.) ("When the court orders claims presented to the receiver, the receiver must accept or reject the claims.  In doing so the receiver acts in many respects as a master and passes on the validity and fairness of the claims and also to their legality.  When the court reviews the receiver's findings of fact and law and approves or disapproves the findings, the court's action is equivalent to a final order").  The Receiver also notes that the Court of Appeals for the First Circuit has recognized the Court's authority to establish and administer a claims bar date procedure. See Callahan et al. v. Moneta Capital Corp., 415 F.3d 114, 120 (1st Cir. 2005) (recognizing that "a District Court acting as a receivership court has broad discretion in determining whether to permit a claimant to file a late claim or to amend a timely filed claim").  A copy of the Order from that matter that established the summary disposition procedures examined by the First Circuit is attached hereto as **Exhibit 1.**  The proposed Order filed with the instant Motion follows the model and language of that Order.[1]

The proposed Order filed herewith provides the appropriate mechanism for

---

[1] SBA has used this same model in all of its receiverships.  Based upon the Receiver's experience, these summary procedures are the accepted "practice" for resolving bar date claims for SBA licensees under 15 U.S.C. § 687c as contemplated by Rule 66 of the Federal Rules of Civil Procedure.

resolving the order and priority of all pending claims against the Zero Stage VI estate

pursuant to the Bar Date Order.

      **B.**     **Priority of Claims**

      The following is a brief summary of some of the legal principles the Receiver

relied upon in making its recommendations for the priority of allowed claims:

      1.      First priority of administrative claims:  <u>see</u> <u>Receivership Order</u>, ¶ 9; and

<u>Clark</u>, <u>supra</u>, at § 667 (claims paid only after administrative expenses).

      2.      Priority of SBA's claim for $93,205,000 over the private limited partners:

<u>see</u> 15 U.S.C. § 683(g)(3) ("In the event of liquidation of the company [SBIC],

participating securities shall be senior in priority for all purposes to all other equity

interests in the issuing company, whenever created."); 13 C.F.R. §

107.1505(f)(redemption price of participation securities have priority over all other

equity); <u>SBA Annex PS</u>, § 4.6, at page 8 (SBA's interest senior in priority for all

purposes to all other partnership interests or other equity interests) (copy attached hereto

as **Exhibit 2**).

      3.      Priority of SBA's claim for $93,250,000 over the allowed portion of the

claim of Zero Stage Capital Company, Inc. ("ZSC"): SBA provided $93,250,000 to Zero

Stage VI, which ZSC has acknowledged in the financial statements it prepared for Zero

Stage VI.  ZSC submitted a claim against Zero Stage VI for management fees of over

$7.9 million.[2] Of that amount, ZSC had repeatedly agreed and acknowledged to waive

$7.7 million[3] until such time as SBA and the private limited partners were re-paid in full

their capital contributions.   See <u>Zero Stage Capital VI, L.P. Fourth Quarter Report 2004</u>,

---

[2] The various components of ZSC's claim are broken down in the accompanying Recommendation.
[3] As of December 31, 2004 it was $7.3 million and had grown to $7.7 million  by  March 31, 2005, see
Exhibits 3 and 4, respectively.

at page 71, * ("Zero Stage Capital Company, Inc., the management company, has agreed to waive the collection of all management fees due and payable and any future fees until such time as the Limited Partners have received repayment of their capital contributions to the Partnership")(excerpt attached hereto as **Exhibit 3**)  <u>See</u> also Exhibit H to the Notice of Recommended Disposition, Tabs 9, 10 and 12; a<u>n</u>d <u>see</u> SBA Form 468 for Zero Stage Capital VI for the period ended March 31, 2005, page 3P, line 40 (attached hereto as **Exhibit 4**).

        ZSC's conduct constituted waiver of those claims pre-receivership.  "The Massachusetts standard for waiver is an uncompromising one.  A finding of waiver must be premised upon 'clear, decisive, and *unequivocal* conduct on the part of an authorized representative ⋯ indicating that [it] would not insist on adherence to the [agreement]." <u>Dunkin' Donuts Inc. v. Panagakos</u>, 5 F. Supp. 2d 57, 60 (D. Mass. 1998) (emphasis in original) (citations omitted).  In light of this waiver, SBA's claim has priority over ZSC's claim for unpaid management fees.

        Moreover, Paul Kelley managed both ZSC and Zero Stage VI (through the general partner of Zero Stage VI and through ZSC as the manager of Zero Stage VI).  Paul Kelley attested to the waiver on behalf of ZSC on the one hand (Exhibit H to the Notice of Recommended Disposition, Tabs 9, 10 and 12), and also on behalf of Zero Stage VI on the other (Exhibit 4).  ZSC's acknowledgement of that waiver in its financial reporting on behalf of Zero Stage VI (Exhibit 3) is a binding admission that said fees were not payable by Zero Stage VI for two reasons.  First, Zero Stage VI relied upon ZSC's waiver in preparing its financial reports under the criminal penalties of 18 U.S.C. §§ 1001 and 1006 and submitting them to the SBA.  By attesting to both the waiver and

the reports submitted to SBA, Paul Kelley has bound ZSC to the contents of said reports

and ZSC cannot contradict statements contained therein.  Second, Zero Stage VI's

financial reports as well as the letter agreements signed by ZSC and submitted to SBA

were subject to regulations relied upon by the SBA in evaluating the continuing

performance of Zero Stage VI and ZSC, including without limitation 13 C.F.R. §

107.500, 507(b), 520, 600, 630, 690 and 1820(b)(1).  ZSC knew or should have known

that the SBA would rely on representations submitted under penalty of 18 U.S.C. §§ 1001

and 1006.  ZSC is therefore estopped from claiming that it did not intend to waive and/or

subordinate the fees to which it now claims entitlement.  See Dunkin' Donuts, 5 F. Supp.

2d at 62 (Estoppel requires proof of "conduct amount[ing] to a representation that was

intended to induce a course of conduct on [the relying party's] part and that [the relying

party] did reasonably rely on…to [its] detriment").

     4.     Priority of the Private Limited Partners' rights to return of capital before

payment to ZSC of its allowed claim: Same as immediately preceding citations.

     5.     Priority of SBA's claim for accrued Prioritized Payments over the allowed

claim of ZSC: see Exhibit H to Recommended Disposition, Tab 12.

     **C.    Denial of Claims**

     The Receiver has relied upon the Orders of this Court and the principles of

estoppel, contract, and employment law in making its recommendations for denial of

claims.

     Denial of Ronald Finlayson's claim for $1,047,680:  see Dykes v. DePuy, Inc.,

140 F.3d 31, 37 -38 (1st Cir. 1998) (Factors to consider when differentiating between an

employee and independent contractor are: the hiring party's right to control the manner

and means by which the product is accomplished; the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party); see also Brigham's Case, 348 Mass. 140, 141-142 (1964) ("If in the performance of his work an individual is at all times bound to obedience and subject to direction and supervision as to details, he is an employee; but if he is only responsible for the accomplishment of an agreed result in an agreed manner, he is an independent contractor"); see also National Ass'n of Government Employees v. Labor Relations Com'n, 59 Mass. App. Ct. 471, 474, 796 N.E.2d 856, 858-59 (2003) ("The primary test is whether one has a right to control the individual's work performance…In addition to control and supervision, relevant factors in identifying an employer may include the method of payment; the skill required in the occupation in question; the purported employer's provision of tools, instrumentalities, and a place of work; and the parties' understanding of the nature of the relationship created").

## III.   **CONCLUSION**

In accordance with the instructions of the Court, the Receiver solicited, reviewed, analyzed and grouped by order and priority claims against Zero Stage VI.

WHEREFORE, the Receiver respectfully moves this Court to enter the proposed Order filed simultaneously herewith, approving the Receiver's recommendations, and

establishing a summary procedure whereby those claimants who oppose the Receiver's

recommendations are authorized to file Motions in opposition, as contemplated in the Bar

Date Order.

Respectfully submitted,

U. S. SMALL BUSINESS ADMINISTRATION,
as Receiver for Zero Stage VI Capital Corporation

Dated: November 2, 2006        By:    /s/ Stacey P. Nakasian
                                      STACEY P. NAKASIAN
                                      Duffy, Sweeney & Scott, LLP
                                      One Turks Head Place, Suite 1200
                                      Providence, R.I. 02903
                                      Tel. (401) 455-0700
                                      Fax (401) 455-0701

                                      THOMAS W. RIGBY
                                      (VA Bar No. 34663; DC Bar No. 463532)
                                      Chief Counsel for SBIC Litigation, Office of SBIC

                                      Enforcement, Office of General Counsel
                                      U.S. Small Business Administration
                                      409 Third Street, S.W., 7th Floor
                                      Washington, D.C. 20416
                                      Telephone: (202) 619-1610
                                      Facsimile: (202) 481-5866

                                      Attorneys for the Receiver

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of November, 2006, I electronically filed the foregoing ***Receiver's Memorandum in Support of Receiver's Motion for Entry of an Order Approving the Recommendation for Disposition of Claims Received in Response to Claims Bar Date*** with the Clerk of the Court for the United States District Court for the District of Massachusetts using the ECF System which will send notification to the following registered participants of the ECF System as listed on the Court's Notice of Electronic Filing.:

Michael J. Sullivan
United States Attorney
c/o Rayford A. Farquhar
Assistant U.S. Attorney
U.S. Attorney's Office
District of Massachusetts
One Courthouse Way, Suite 9200
Boston, MA 02110

Donald K. Stern, Esq.
Julia Forest-Davies
Jason L. Watkins
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
*Attorney for Zero Stage Capital Company, Inc.*

Charles A. Lovell
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

**And by mailing a copy of same on November 2, 2006 to the following, via First Class Mail:**

Maurice J. Whalen
Invotex Group
Principal Agent for the Receiver
SBA, Receiver for Zero Stage Capital VI, L.P..
1100 Connecticut Avenue, N.W., Suite 710
Washington, DC 20036

Charles A. Lovell, Esq.
Partridge Snow & Hahn, LLP
180 South Street
Providence, RI  02903
Re: The Beacon Mutual Ins. Co.

Thomas W. Rigby, Esq.
Office of General Counsel
U.S. Small Business Administration
409 Third Street
Seventh Floor
Washington, DC 20416

Joseph T. O'Leary
Sovereign Bank
75 State Street
Mail Code:  MA1 SST 04-10
Boston, MA  02109

Mr. John L. Koenig, Esq.
McNamara Koenig & McCarthy, PC
65 William Street, Suite 250
Wellesley, MA  02481

Christopher K. Pfirrman, Esq.
Sovereign Bank, Legal Department
75 State Street
Mail Code:  MA1 SST 0401
Boston, MA  02109

Mr. James Sloman, Jr.
68 Old Concord Road
Belmont, MA  02478

David J. Stanland
Chief Investment Officer
NewAlliance Bank
195 Church Street
New Haven, CT  06510

Mr. Donald C. McQueen
Executive Vice President
Bank Rhode Island
One Turks Head Place,  16th Floor
Providence, RI  02903

Mr. Donald Brannelly
Assistant Vice President
Danversbank
One Conant Street
Danvers,  MA  01923

Ms. Heather Fritzky
New Hampshire Retirement System
4 Chenell Drive
Concord, NH  03301-8509

Mr. Alan P. Cleveland, Esq.
Sheehan Phinney Bass & Green, P.A.
1000 Elm Street
Manchester, NH  03105-3701
Re:  New Hampshire Retirement System

Ms. Rosalyn A. Ciulla
Key Community Development Corporation
127 Public Square
Mailcode OH-01-27-0700
Cleveland, OH  44114

Ms. Kristin E. Richner, Esq.
Squire, Sanders & Dempsey, LLP
41 North High Street
Columbus, OH  43215
Re:  Key Community Dev. Corp.

Mr. Edward H. Seksay
General Counsel
Rockland Trust Company
288 Union Street
Rockland, MA  02370

G. Wirtz
Managing Director
PLANT N.V.
Roosbroekstraat 2
B-1541 Sint-Pieters-Kapelle (Herne)
Belgium

Mr. William B. Franklin
Managing Director
Fleet Development Ventures, LLC
231 S. LaSalle Street, 12th Floor
Chicago, IL  60604

Mr. William Udovich
Bank of America, N.A.
Legal Department
IL1-231-07-17
231 S. LaSalle Street
Chicago, IL  60697
Re: Fleet Development Ventures, LLC

Mr. Scott Sullivan
Finance Manager
Citizens Bank of Massachusetts
28 State Street, 15th Floor
Boston, MA  02109

Mr. James F. Wallace
Senior Vice President & CFO
Citizens-Union Savings Bank
4 South Main Street
Fall River, MA  02721

Mr. Richard Nadeau, Jr.
Nadeau & Simmons, P.C.
56  Pine Street
Providence, RI  02903
Re:  Business Dev. Co. of RI

President
Business Development Co. of Rhode Island
40 Westminster Street, Suite 702
Providence, RI  02903

William F. Shea, LLC
48 Leyland Road
West Hartford, CT  06117

Mr. John D. Hazelton
Senior Vice President
MBNA Community Development Corporation
1100 North King Street
Wilmington, DE  19884

Ms. Karen Jessey
Investment Counsel
Textron, Inc.
40 Westminster Street
Providence, RI  02903

Mr. Mark T. Collins, Esq.
325 Boston Post Road
Millbrook II
Sudbury, MA  01776
Re: Finlayson

Mr. Jason L. Watkins, Esq.
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110-1726
Re: Zero Stage Capital Company, Inc.

Mr. Paul M. Kelley
Managing Director and CEO
Zero Stage Capital Company, Inc.
265 Franklin Street
Boston, MA  02110

/s/ Stacey P. Nakasian

3

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA,    )
                                )
        Plaintiff,        )
                                )
        v.                )     Civil Case No. 99-565L
                                )
MONETA CAPITAL        )
CORPORATION          )
                                )
        Defendant.     )

**ORDER APPROVING THE RECEIVER'S RECOMMENDED DISPOSITION OF
CLAIMS, AUTHORIZING PAYMENT OF APPROVED CLAIMS AND
ESTABLISHING SUMMARY DISPOSITION PROCEDURE**

This matter came before this Court on the Motion of the U.S. Small Business

Administration ("SBA") as Receiver (the "Receiver") for Moneta Capital Corporation

("Moneta") for an Order approving the Receiver's recommended disposition of claims,

authorizing payment of claims to the extent of available receivership assets and establishing a

summary disposition procedure.  The Receiver's Motion is supported by a Memorandum in

Support and the Receiver's Notice and Determination of Claims Received and Priority of Claims.

After review of the pleadings,

**IT IS HEREBY ORDERED THAT:**

1.    The Receiver's <u>Motion for an Order Establishing a Summary Disposition</u>

<u>Procedure and Authorizing Payment of Claims</u> is **GRANTED;**

2.    The Receiver's <u>Notice of Recommended Disposition of Claims</u> is hereby

**APPROVED.**

3.    The Receiver is authorized to pay the following claims in the following order of

priority, to the extent of available receivership assets, and that the following claims are hereby

**APPROVED**:

a.  **First**, any and all administrative expenses of the receivership estate as reported in the annual Receiver's Reports to this Court;

b.  **Second**, any outstanding Receiver's Certificate borrowings, plus accrued interest;

c.  **Third**, the following general claims received by the Receiver and approved by this Court, which are to be paid on a pro rata basis:

    i.  The claim of Dick & Hague, Ltd. for $39,232.05;

    ii.  The claim of the Town of Dighton, Massachusetts for $3,307.21;

    iii.  The claim of Mintz, Levin, Cohn *et.al* in the amount of $6,061.79;

    iv.  The claim of the City of Providence Tax Collector in the amount of $1,809.55;

    v.  The claim of Ocean State Planners, Inc. in the amount of $513.70;

    vi.  The claim of K. Joseph Shekarchi, Esq. in the amount of $250.00;

    vii.  The claim of Waste Management of Rhode Island in the amount of $338.72;

    viii.  The claims of Boisseau, Dean & Gyorgy, LLP in the amount of $7,356.87, in the amount of $16,622.33, and in the amount of $1,705.37;

    ix.  The claims of The Law Offices of Everett Petronio, Esq. in the amount of $33,280.59; $8,436.31; $703.00; $15,204.24; and $92.50;

    x.  The claim of the Receiver for Fairway Capital Corporation in the amount of $8,400.00;

    xi.  The claim of the Receiver for Fairway Capital Corporation in the amount of $150,000, plus interest, to the extent that there are insufficient funds to pay this claim from the sale by the Moneta Receiver of the assets securing the participated loan pursuant to which this claim is made;

xii.   The claims of the Receiver for Wallace Capital Corporation in the amount of $113,662.58, plus interest and in the amount of $40,140.36, plus interest;

xiii.  The claim of Wallace Capital Corporation in the amount of $120,000 plus interest, to the extent that there are insufficient funds to pay this claim from the sale by the Moneta Receiver of the assets securing the participated loan pursuant to which this claim is made;

xiv.   The claim of Gregory T. Parkos as Trustee in the amount of $120,000, plus interest, to the extent that there are insufficient funds to pay this claim from the sale by the Moneta Receiver of the assets securing the participated loan pursuant to which this claim is made.

d.   **Fourth,** after satisfaction in full of the administrative expenses, the Receiver's Certificates and the general claims, the Receiver shall make payment on the SBA indebtedness pursuant to the Judgment entered March 21, 2000 and amended on March 28, 2000 by this Court in the amount of $6,915,257.26, plus post-judgment interest, to the extent of available receivership assets as the Receiver shall determine. The Receiver is authorized to make payments to the SBA on the Judgment as the Receiver deems appropriate, including interim payments to be made prior to the close of the receivership;

e.   **Fifth,** after payment of all other claims described above, to the sole shareholder of Moneta, Northeast Capital Pension Fund.

4.   The following claims are hereby **DENIED** as claims that are properly classified as participation interests to be paid pursuant to this Court's November 4, 2002 Order:

a.   The claims of Fairway Capital Corporation in the amounts of $83,699.99 and $625,000;

b.   The claims of Wallace Capital Corporation in the amounts of $157,625.00; $400,000 and $333,333.33;

c.     The claim of Richmond Square Capital Corporation 401(k) Profit Plan in the amount of $204.067.09;

d.     The claim of Patricia Betz Self-Directed IRA in the amount of $86,500;

e.     The claim of Patricia Betz in the amount of $100,000; and

f.     The claims of Paul Agatiello in the aggregate amount of $244,000.

5.     That the following claims are hereby **DENIED**:

a.     The claim of Fairway Capital Corporation and its assignees, filed by Arnold Kilberg, in an amount to be determined;

b.     The claim of Richmond Square Capital Corporation in the amount of $1,183,504.75;

c.     The claim of Acropolis Enterprises, Inc. for an amount to be determined;

d.     The claims of the Town of Cumberland, Rhode Island in the amount of $3,434.08 and $25,987.34;

e.     The claim of the Cumberland Fire District in the amount of $2,752.51;

f.     The claims of 167 Hotel on the Cay Timeshare Owners in the amounts of $54,780.00 and $108,550.00;

g.     The claim of Jennifer C. Christopher in an amount to be determined;

h.     The claim of the Belisle Group in the amount of $1,184,385.00;

i.     The claim of Rodio & Brown, Ltd. in an unspecified amount;

k.     The claim of James Callahan, Rita and Francis DiMento and Henry Vara in an unspecified amount;

l.     The claim of the United States Department of Labor in the amount of $101,874.41;

m.     The claims of the Law Offices of Everett Petronio for interest on any unpaid invoices for legal services due from Moneta;

4

     n.     The claims of the Law Office of Everett Petronio in the amounts of $40,344.07, $5,194.38; $159.56; $8,243.50; $96,661.25; $10,134.58; $2,763.95; and $59,375.24.

     o.     The claims of Boisseau, Dean & Gyorgy, LLP in the amounts of $5,552.05; $12,343.35, and $7,373.06;

     p.     The claim of the Township of Hopewell, New Jersey in the amount of $7,009.84.

6.     Ruling upon the following claims will be **DEFERRED** until such time as the Receiver has fully investigated and reviewed its interests in a $400,000 syndicated loan to Corliss Landing Associates/marsh Landing Associates, Ltd. and informed this Court of its findings and recommendation:

     a.     The claim of Wallace Capital Corporation in the amount of $150,000, plus interest.

7.     Any claimant who opposes the Receiver's recommended disposition of its claim, which recommended disposition is hereby approved and ratified by this Court, is **ORDERED** to either file a Motion in Opposition to the Receiver's recommended disposition of its claim, together with a Brief in Support of its Motion which sets forth the specific factual and legal grounds for its opposition, and a proposed Order, **within thirty (30) days** from the date of service of a copy of this Order by the Receiver on the claimant, or such claimant's claim shall be forever barred and deemed null and void, and such claimant shall be permanently enjoined from asserting, pursuing or prosecuting any such claim against Moneta, the Receiver, their successors and assigns, or against any assets or funds in the possession of the Receiver. The claimant is ordered to serve copies of its Motion, Brief, exhibits and proposed order, if any, on the attorney

5

for the Receiver via first class mail, postage pre-paid;

8.    The Receiver is hereby authorized to file a Brief in Rebuttal to any such Motion and Brief within twenty (20) days of receipt of such Motion and Brief.

9.    This Court shall resolve any such opposition(s) on the basis of the claim documents previously submitted to the Receiver, the Receiver's <u>Notice and Determination of Claims Received and Priority of Claims and SBA Judgment</u>, along with the accompanying Motion and Memorandum, the claimant's Motion and Brief in opposition, and the Receiver's Rebuttal Brief thereto, without hearing, unless this Court decides to order otherwise.

10.    This Order shall become a **Final Order thirty (30) days after service** hereof by the Receiver with respect to any persons who do not file timely opposition, and all such persons, as well as all other persons who failed to file claims pursuant to the terms of this Court's Orders dated  establishing the Claims Bar Date, shall be forever barred and permanently enjoined from asserting, pursuing or prosecuting any pre-Bar Date Claim (<u>i.e.</u>, arising before August 23, 2001) against Moneta, the Receiver, their successors and assigns or assets or funds in the possession of the Receiver.

6

11.    The Receiver shall serve copies of this Order on all claimants and parties of record.

**SO ORDERED.**

Date: _12/19/03_
      Providence, Rhode Island

~~Ronald R. Lagueux~~

THE HONORABLE RONALD LAGUEUX
Sr. United States District Court Judge

7

**EXHIBIT 2**

SBA Annex PS, Version 1.3 March 15, 1997

**SBA ANNEX PS
VERSION 1.3**

**PROVISIONS FOR
PREFERRED LIMITED PARTNERSHIP INTERESTS**

**SBA ANNEX OF PROVISIONS FOR
PARTICIPATING SECURITIES IN THE FORM OF
PREFERRED LIMITED PARTNERSHIP INTERESTS UNDER
AN AGREEMENT OF LIMITED PARTNERSHIP
FOR A SECTION 301(C) LICENSEE**

This document has been drafted by the law firm of O'Sullivan Graev & Karabell, in collaboration with the law firms of Pepper, Hamilton & Scheetz and Foley, Hoag & Eliot, the National Association of Small Business Investment Companies, and the Office of the General Counsel of the United States Small Business Administration.

The Small Business Administration does not endorse or approve law firms. The above legend is not an endorsement or approval by the Small Business Administration of any law firm identified therein, and no representation to the contrary by any party is authorized.

SBA ANNEX PS

## TABLE OF CONTENTS

Page

ARTICLE I   General Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1
   1.1.   Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1
   1.2.   Conflict With the SBIC Act . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4
   1.3.   Conflict With Other Provisions of the Agreement . . . . . . . . . . . . . . . . . . . .   4
   1.4.   Effective Date of Incorporated SBIC Act Provisions . . . . . . . . . . . . . . . . . . .   5
   1.5.   Incorporation of this Annex into the Agreement . . . . . . . . . . . . . . . . . . . .   5

ARTICLE II   Purpose and Powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

ARTICLE III   Management . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6
   3.1.   Authority of General Partner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6
   3.2.   Valuation of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

ARTICLE IV   Small Business Investment Company Matters . . . . . . . . . . . . . . . . . . . . .   7
   4.1.   Provisions Required by the SBIC Act for Issuers of Participating Securities . . . . .   7
   4.2.   Provisions Required by the SBIC Act for Issuers of Debentures . . . . . . . . . . . .   7
   4.3.   Admission of Preferred Limited Partners and Increased Commitments . . . . . . . .   7
   4.4.   Redemption and Withdrawal of Preferred Limited Partners . . . . . . . . . . . . . .   8
   4.5.   Assignment of Right to Distributions . . . . . . . . . . . . . . . . . . . . . . . . . .   9
   4.6.   Priority of Preferred Limited Partnership Interests on Liquidation . . . . . . . . . .   9
   4.7.   SBA as Third Party Beneficiary . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9
   4.8.   Representations of Private Limited Partners. . . . . . . . . . . . . . . . . . . . . . .   9
   4.9.   Notices With Respect to Representations by Private Limited Partners . . . . . . . .   10

ARTICLE V   Capital Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11
   5.1.   Establishment of Capital Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11
   5.2.   Times of Allocation to Capital Accounts . . . . . . . . . . . . . . . . . . . . . . . .   11
   5.3.   Allocations to Capital Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

ARTICLE VI   Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13
   6.1.   Distributions to Partners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13
   6.2.   Distributions of Portfolio Securities . . . . . . . . . . . . . . . . . . . . . . . . . . .   14
   6.3.   Apportionment of Distributions Among the General Partner and Private
        Limited Partners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

ARTICLE VII   Partners' Commitments . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15
   7.1.   Conditions to the Commitments of the General Partner and the Private
        Limited Partners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15
   7.2.   Failure to Make Required Capital Contributions . . . . . . . . . . . . . . . . . . . .   15
   7.3.   Termination of the Obligation to Contribute Capital . . . . . . . . . . . . . . . . . .   16

-i-

                                                                                    Page

    7.4.    Withdrawal by ERISA Regulated Pension Plans  . . . . . . . . . . . . . . . . . . . . .    16
    7.5.    Withdrawal by Government Plans Complying with State and Local Law  . . . . . .    16
    7.6.    Withdrawal by Government Plans Complying with ERISA . . . . . . . . . . . . . . .    17
    7.7.    Withdrawal by Tax Exempt Private Limited Partners . . . . . . . . . . . . . . . . . .    17
    7.8.    Withdrawal by Registered Investment Companies  . . . . . . . . . . . . . . . . . . . .    17
    7.9.    Notice and Opinion of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

ARTICLE VIII        Dissolution  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

ARTICLE IX  Audit and Report  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

ARTICLE X  Miscellaneous  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19
    10.1.   Assignability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19
    10.2.   Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

EXHIBIT A-1  Instrument of Admission or Increase in
                    Commitment for a Preferred Limited Partner

S:\1700\193\11014J.WP

-ii-

SBA Annex PS, Version 1.3 March 15, 1997

## SBA ANNEX PS

## ARTICLE I

### General Provisions

**1.1.  Definitions.**  For the purposes of this Annex, the following terms shall have the following meanings:

"Act" shall mean the state statute under which the Partnership is organized.

"Accumulated Prioritized Payments" shall have the meaning set forth in the SBIC Act.

"Adjustments" shall have the meaning set forth in the SBIC Act.

"Agreement" shall mean the agreement of limited partnership of the Partnership to which this Annex is attached and incorporated as a provision thereof.  References to the Agreement shall be deemed to include all provisions incorporated in the Agreement by reference.

"Assets" shall mean and include common and preferred stock (including warrants, rights and other options relating thereto or any combination thereof), notes, bonds, debentures, trust receipts and other obligations, instruments or evidences of indebtedness, and other properties or interests commonly regarded as securities, and in addition, interests in real property, whether improved or unimproved, and interests in personal property of all kinds, tangible or intangible, choses in action, and cash, bank deposits and so-called "money market instruments".

"Capital Account" shall mean the account of each Partner that reflects its interest in the Partnership determined in accordance with Article V.

"Closing Capital Account" shall mean, with respect to any fiscal period, the Opening Capital Account of each Partner for such fiscal period after allocations have been made to such Capital Account in accordance with Section 5.3.

"Code" shall mean the Internal Revenue Code of 1986, and the regulations and interpretations thereof promulgated by the Internal Revenue Service, as amended and supplemented from time to time.

"Commitments" shall mean the capital contributions to the Partnership which the Preferred Limited Partners have made and the other Partners have made or are obligated to make to the Partnership.  The terms of the Commitments of the Preferred Limited Partners shall be as set forth in this Annex; provided, that any Commitment by a Preferred Limited Partner shall include only the amount such Preferred Limited Partner has actually contributed to the Partnership, and shall not include any amount under any agreement by such Preferred Limited Partner or SBA to provide Leverage to the Partnership which has not been contributed to the Partnership.  The amounts and terms of the Commitments of the General Partner and the Private Limited Partners shall be as defined in the Agreement.

-1-

"Debentures" shall have the meaning set forth in the SBIC Act.

"Earmarked Assets" shall have the meaning set forth in the SBIC Act.

"ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended, and the regulations and interpretations thereof promulgated by the Department of Labor.

"General Partner" shall mean the general partner or general partners of the Partnership.

"Institutional Investor" shall have the meaning set forth in the SBIC Act.

"Investment Company Act" shall mean the Investment Company Act of 1940, as amended, and the regulations and interpretations thereof promulgated by the Securities and Exchange Commission.

"Leverage" shall have the meaning set forth in the SBIC Act.

"Maximum Tax Liability" shall have the meaning set forth in the SBIC Act.

"Net Losses" shall mean, with respect to any fiscal period, the excess, if any, of:

 (i) all expenses and losses incurred during such fiscal period by the Partnership over

 (ii) the aggregate revenue, income and gains during such fiscal period by the Partnership from all sources.

For purposes of determining Net Losses:

 (A) items shall be taken into account only to the extent that they are includable as items of income, credit, loss or deduction for Federal income tax purposes or, in the case of items of income, constitute income that is exempt from Federal income tax; and

 (B) in the event that any Asset is distributed in kind, it shall be deemed sold at the value established at the most recent valuation of such Asset under the Agreement (or such other valuation date as is required under the SBIC Act) and any unrealized appreciation or depreciation with respect to such Asset shall be deemed realized and included in the determination of Net Losses.

"Net Profits" shall mean, with respect to any fiscal period, the excess, if any, of:

 (i) the aggregate revenue, income and gains during such fiscal period by the Partnership from all sources over

 (ii) all expenses and losses incurred during such fiscal period by the Partnership.

-2-

For purposes of determining Net Profits:

(A)   items shall be taken into account only to the extent that they are includable as items of income, credit, loss or deduction for Federal income tax purposes or, in the case of items of income, constitute income that is exempt from Federal income tax; and

(B)   in the event that any Asset is distributed in kind, it shall be deemed sold at the value established at the most recent valuation of such Asset under the Agreement (or such other valuation date as is required under the SBIC Act) and any unrealized appreciation or depreciation with respect to such Asset shall be deemed realized and included in the determination of Net Profits.

"Opening Capital Account", with respect to any fiscal period, shall mean:

(i)   with respect to any Partner admitted during such fiscal period, such Partner's initial capital contribution; and

(ii)   with respect to any Partner admitted during any prior fiscal period, other than a Partner who has withdrawn as of the last day of the preceding fiscal period, such Partner's Closing Capital Account for the preceding fiscal period.

"Outstanding Leverage" shall mean the total amount of outstanding securities (including, but not limited to, Debentures and Participating Securities) issued by the Partnership which qualify as Leverage and have not been redeemed or repaid for purposes of and as provided in the SBIC Act.

"Participating Security" shall have the meaning set forth in the SBIC Act.

"Partners" shall mean the General Partner, the Private Limited Partners and the Preferred Limited Partners, if any.

"Partnership" shall mean the limited partnership established by the Agreement.

"Portfolio Securities" shall mean Assets which do not constitute (i) securities in which a licensee is permitted under 13 C.F.R. §107.530, as in effect from time to time, to invest funds not invested in Small Concerns (as defined in the SBIC Act) or (ii) cash or bank deposits.

"Preferred Limited Partner" shall mean the SBA, in its capacity as a Preferred Limited Partner, or any other person holding one or more Preferred Limited Partnership Interests in the Partnership.

"Preferred Limited Partnership Interest" shall mean a preferred limited partnership interest in the Partnership which qualifies as a Participating Security.

"Prioritized Payment" shall have the meaning set forth in the SBIC Act.

-3-

"Private Capital" shall have the meaning set forth in the SBIC Act.

"Private Limited Partners" shall mean any limited partners of the Partnership, other than any Preferred Limited Partner.

"Profit Participation" shall have the meaning set forth in the SBIC Act.

"Publicly Traded Security" shall mean a Portfolio Security which is Publicly Traded and Marketable as such term is used in the SBIC Act.

"Qualified Nonprivate Funds" shall have the meaning set forth in the SBIC Act.

"Regulatory Capital" shall have the meaning set forth in the SBIC Act.

"Retained Earnings Available for Distribution" shall have the meaning set forth in the SBIC Act.

"SBA" shall mean the United States Small Business Administration.

"SBIC Act" shall mean the Small Business Investment Act of 1958, as amended, and the rules and regulations promulgated thereunder by the SBA, as in effect from time to time.

**1.2. Conflict With the SBIC Act.** The provisions of this Annex and the Agreement shall be interpreted to the fullest extent possible in a manner consistent with the SBIC Act. In the event of any conflict between any provision of the Agreement or this Annex and the provisions of the SBIC Act (including, without limitation, any conflict with respect to the rights of the SBA or the respective Partners hereunder), the provisions of the SBIC Act shall control.

**1.3. Conflict With Other Provisions of the Agreement.** The provisions of the Agreement shall be interpreted to the fullest extent possible in a manner consistent with the provisions of this Annex. In the event of any conflict between any provision of this Annex and any other provision of the Agreement, the provisions of this Annex shall control.

**1.4. Effective Date of Incorporated SBIC Act Provisions.** (a) Subject to Section 1.4(c), any section of this Annex which relates to Participating Securities or Debentures issued by the Partnership and incorporates or refers to a provision of the SBIC Act (including, without limitation, 13 C.F.R. §107.1830 - 107.1850 shall, with respect to the rights of the SBA (or any other holder of any such Participating Security or Debenture) under any such section, as to each Participating Security or Debenture, be deemed to refer to such SBIC Act provision as in effect on the date on which the capital contribution with respect to such Participating Security was made to the Partnership pursuant to Section 4.3 or such Debenture was purchased from the Partnership, as the case may be.

(b) Notwithstanding Section 1.4(a), the provisions of 13 C.F.R. § 107.1820 incorporated by reference in Section 4.1 shall be deemed to be such provisions as in effect on the date of the first capital contribution to the Partnership with respect to a Participating Security; and the provisions of 13 C.F.R. § 107.1810(i) incorporated by reference in Section 4.2 shall be deemed to be such provisions as in effect on the date the first Debenture is purchased from the Partnership after April 25, 1994. If either

-4-

of 13 C.F.R. § 107.1810(i) or 13 C.F.R. § 107.1820 is amended subsequent to the date such Section is incorporated in the Agreement pursuant to this Section 1.4(b), then unless the SBA shall otherwise give its written consent, before the Partnership may issue additional Leverage, this Section 1.4(b) must be amended to incorporate the version of either 13 C.F.R. § 107.1810(i) or 13 C.F.R. § 107.1820 as then in effect, which relates to the Leverage to be issued.

(c)  This Section 1.4 applies to the rights of the SBA in its capacity as a holder or guarantor of Preferred Limited Partnership Interests or Debentures.  This Section 1.4 shall not be construed to apply to the provisions of the SBIC Act which relate to the regulatory authority of SBA under the SBIC Act over the Partnership as a licensed small business investment company.  References to the provisions of the SBIC Act relating to the SBA's regulatory authority shall mean such provisions as in effect from time to time.

1.5.  **Incorporation of this Annex into the Agreement**.  The Agreement shall contain the following provision evidencing the incorporation of this Annex:

> "The provisions of SBA Annex PS attached to this Agreement are incorporated in this Agreement with the same force and effect as if fully set forth herein."

## ARTICLE II

### Purpose and Powers

The Partnership is being organized solely for the purpose of operating as a small business investment company under the SBIC Act and conducting the activities described under Title III of the SBIC Act, and shall have the powers, responsibilities, and be subject to the limitations, provided in the SBIC Act.

## ARTICLE III

### Management

3.1.  **Authority of General Partner**.  (a)  The management and operation of the Partnership and the formulation of investment policy shall be vested exclusively in the General Partner.

(b)  The General Partner shall, so long as it remains the General Partner of the Partnership, comply with the requirements of the SBIC Act, including, without limitation, 13 C.F.R. § 107.160(a) and (b),* as in effect from time to time.

---

\*    These regulations describe the number of individuals required and the organizational requirements for the General Partner.

(c)  The Preferred Limited Partners shall take no part in the control or management of the business or affairs of the Partnership nor shall the Preferred Limited Partners have any authority to act for or on behalf of the Partnership except as is specifically permitted by the Agreement.

(d)  The Partners acknowledge that, in addition to the rights of the SBA under this Annex and the Agreement in the SBA's capacity as a Preferred Limited Partner, the SBA also has regulatory authority over the Partnership as a licensed small business investment company under the provisions of the SBIC Act.  The Partners further acknowledge that the SBA exercises its regulatory authority over the Partnership under the SBIC Act independent of and separate from its rights and actions in its capacity as a Preferred Limited Partner.  Actions taken by SBA pursuant to such regulatory authority shall not be deemed to be actions taken in the SBA's capacity as a Preferred Limited Partner of the Partnership.

**3.2.  Valuation of Assets.**  (a)  The Partnership shall adopt written guidelines for determining the value of its Assets.  Assets held by the Partnership shall be valued by the General Partner in a manner consistent with such written guidelines and the SBIC Act.

(b)  To the extent that the SBIC Act requires any Asset held by the Partnership to be valued other than as provided in the Agreement, the General Partner shall value such Asset in such manner as it determines to be consistent with the SBIC Act.

(c)  Assets held by the Partnership shall be valued not less often than annually (or more often, as the SBA may require), and shall be valued not less often than semi-annually (or more often, as the SBA may require) at any time that the Partnership has Outstanding Leverage.[*]

## ARTICLE IV

### Small Business Investment Company Matters

**4.1.  Provisions Required by the SBIC Act for Issuers of Participating Securities.**[**] (a)  The provisions of 13 C.F.R. § 107.1820 are hereby incorporated by reference in this Annex as if fully set forth herein.

(b)  The Partnership and the Partners hereby consent to the exercise by the SBA of all of the rights of the SBA under 13 C.F.R. § 107.1820 and agree to take all actions which the SBA may require in accordance with 13 C.F.R. § 107.1820.

(c)  This Section 4.1 shall be in effect at any time that the Partnership has outstanding Participating Securities or owns Earmarked Assets, and shall not be in effect at any time that the Partnership neither has outstanding Participating Securities nor owns Earmarked Assets.

---

[*]  See 13 C.F.R. § 107.503(d), which requires valuation of assets on a semi-annual basis if there is outstanding Leverage.

[**]  This Section incorporates regulations relating to the special rights of the SBA when the Partnership has outstanding Participating Securities.

-6-

(d) Nothing in this Section 4.1 shall be construed to limit the ability or authority of the SBA to exercise its regulatory authority over the Partnership as a licensed small business investment company under the SBIC Act.

**4.2. Provisions Required by the SBIC Act for Issuers of Debentures.** (a) The provisions of 13 C.F.R. § 107.1810(i) are hereby incorporated by reference in this Annex as if fully set forth herein.

(b) The Partnership and the Partners hereby consent to the exercise by the SBA of all of the rights of the SBA under 13 C.F.R. § 107.1810(i) and agree to take all actions which the SBA may require in accordance with 13 C.F.R. § 107.1810 (i).

(c) This Section 4.2 shall be in effect at any time that the Partnership has outstanding Debentures, and shall not be in effect at any time that the Partnership does not have outstanding Debentures.

(d) Nothing in this Section 4.2 shall be construed to limit the ability or authority of the SBA to exercise its regulatory authority over the Partnership as a licensed small business investment company under the SBIC Act.

**4.3. Admission of Preferred Limited Partners and Increased Commitments.** The Partnership may, from time to time after the date hereof, admit one or more Preferred Limited Partners under the following terms and conditions:

(a) Each Preferred Limited Partner shall execute and deliver to the Partnership an instrument in the form attached hereto as Exhibit A-1, or other form satisfactory to the Partnership and the Preferred Limited Partner, evidencing such Preferred Limited Partner's agreement to be bound by and comply with the terms and provisions of the Agreement as if such Preferred Limited Partner were an original signatory to the Agreement, and setting forth such Preferred Limited Partner's name, address and Commitment.

(b) Each Preferred Limited Partner shall be admitted to the Partnership as of the date that such instrument is executed by such Preferred Limited Partner and the General Partner. Each Preferred Limited Partner shall pay on the date of its admission to the Partnership, a capital contribution equal to 100% of the amount of its Commitment.

(c) At the time that any Preferred Limited Partner makes an additional capital contribution to the Partnership it shall execute an instrument as provided in Section 4.3(a) setting forth the amount of such additional capital contribution, and its Commitment shall be increased by the amount of such capital contribution.

**4.4. Redemption and Withdrawal of Preferred Limited Partners.** (a) The redemption of the Preferred Limited Partnership Interest of a Preferred Limited Partner for purposes of

---

This Section incorporates regulations relating to the special rights of the SBA when the Partnership has outstanding Debentures.

-7-

the SBIC Act shall not cause the withdrawal of such Preferred Limited Partner from the Partnership, and any Preferred Limited Partner whose Preferred Limited Partnership Interest is redeemed for purposes of the SBIC Act shall remain a Preferred Limited Partner of the Partnership notwithstanding such redemption, until such time as such Preferred Limited Partner is deemed to have withdrawn pursuant to Section 4.4(d).

(b) In the event that any Preferred Limited Partner has not received on a cumulative basis an amount equal to 100% of the original issue price of such Preferred Limited Partner's Preferred Limited Partnership Interest in the Partnership, plus the amount of any Prioritized Payments and Adjustments that are due under the SBIC Act but unpaid with respect to such Preferred Limited Partner's Preferred Limited Partnership Interest, prior to the redemption date of such Preferred Limited Partner's Preferred Limited Partnership Interest for purposes of the SBIC Act, then on such redemption date the Partnership shall distribute such amount to such Preferred Limited Partner as shall be required so that as of such date such Preferred Limited Partner shall have received on a cumulative basis an amount equal to the original issue price plus all Prioritized Payments and Adjustments which are due under the SBIC Act but unpaid with respect to its Preferred Limited Partnership Interest.

(c) If, at the time any Preferred Limited Partner's Preferred Limited Partnership Interest has been redeemed for purposes of the SBIC Act, the Partnership (i) has not paid all Prioritized Payments and Adjustments in full and (ii) has not sold or otherwise disposed of all assets which are Earmarked Assets, then the Partnership's obligation to pay Prioritized Payments and Adjustments shall continue and payment shall be made as provided in the SBIC Act. The Partnership's obligation to pay Profit Participation with respect to Earmarked Assets shall continue until such time as all Earmarked Assets are disposed of. If on disposition of all Earmarked Assets there remain any Accumulated Prioritized Payments, the obligation to make such payments shall be extinguished.

(d) A Preferred Limited Partner shall be deemed to have withdrawn from the Partnership at such time as the Preferred Limited Partnership Interest of such Preferred Limited Partner has been redeemed, the Partnership no longer owns any assets which are Earmarked Assets, and all amounts due from the Partnership to such Preferred Limited Partner with respect to its Preferred Limited Partnership Interest (including, without limitation, all allocated Profit Participation) have been paid to such Preferred Limited Partner or the obligation to pay such amounts has been extinguished as provided in Section 4.4(c).

**4.5.** <u>Assignment of Right to Distributions</u>. A Preferred Limited Partner (including the SBA in its capacity as a Preferred Limited Partner) may assign to a designee (including any trust, or trustee for a trust, established pursuant to the SBIC Act) all or part of its right to receive any distribution or payment from the Partnership with respect to its Preferred Limited Partnership Interest. Upon receipt of written notice from the Preferred Limited Partner, the Partnership shall pay any such assigned distribution or payment directly to such designee. Any assignment made solely pursuant to this Section 4.5 shall not be deemed an assignment of a partnership interest or the substitution of such designee as a Partner, and shall not be deemed to give such designee any rights or interest in the Partnership as a Partner in the Partnership.

**4.6.** <u>Priority of Preferred Limited Partnership Interests on Liquidation</u>. In the event of the liquidation of the Partnership pursuant to the SBIC Act, the Preferred Limited Partnership Interests shall be senior in priority for all purposes to all other partnership interests (or other equity interests) in

-8-

the Partnership to the extent of the amount determined, with respect to each Preferred Limited Partnership Interest, as provided in the SBIC Act.[*]

      **4.7. SBA as Third Party Beneficiary.** In the event that the SBA is not a party to the Agreement, the SBA shall be deemed an express third party beneficiary of the provisions of the Agreement (including, without limitation, this Annex) to the extent of the rights of the Preferred Limited Partners and the SBA thereunder and under the Act, and the SBA shall be entitled to enforce such provisions (including, without limitation, the obligations of each Partner to make capital contributions to the Partnership) for the benefit of the Preferred Limited Partners and for its benefit, as if the SBA were a party thereto.

      **4.8. Representations of Private Limited Partners.** (a) Each Private Limited Partner represents to the Partnership, each Preferred Limited Partner and the SBA that it is an Institutional Investor with respect to the Partnership; provided, however, that in lieu of making this representation, any Private Limited Partner may provide the Partnership with a separate written representation describing its status under the definition of an Institutional Investor.[**]

      (b) Each Private Limited Partner represents to the Partnership, each Preferred Limited Partner and the SBA that its Commitment qualifies as Private Capital, and none of its Commitment constitutes Qualified Nonprivate Funds whose source is Federal funds; provided, however, that in lieu of making this representation any Private Limited Partner may provide the Partnership with a separate written representation stating the amount of its Commitment which qualifies as Private Capital and the amount of its Commitment which constitutes Qualified Nonprivate Funds whose source is Federal funds.[***]

      (c) Each Private Limited Partner represents to the Partnership, each Preferred Limited Partner and the SBA that (i) its net worth or (in the case of any employee benefit plan, pension plan or government plan as defined under ERISA) net assets available for benefits equals or exceeds $10 million (exclusive, in the case of any individual, of the value of any equity in such individual's most valuable residence), (ii) its Commitment to the Partnership represents less than ten percent (10%) of such Private Limited Partner's net worth or (in the case of any employee benefit plan, pension plan or government plan as defined under ERISA) net assets available for benefits, and (iii) if such Private Limited Partner is a natural person, such person is a permanent resident of the United States; provided, however, that in lieu of making this representation any Private Limited Partner may provide the Partnership with a separate written representation stating the amount of its net worth (exclusive, in the case of any individual, of the value of any equity in such individual's most valuable residence) or net assets available for benefits (in the case of any such employee benefit plan, pension plan or government plan), the percentage of such net worth or net assets available for benefits represented by such Private Limited

---

[*]    13 C.F.R. § 107.1500(f) specifies the amount of the priority of a Preferred Limited Partnership Interest on liquidation.

[**]    See the definition of "Institutional Investor" at 13 C.F.R. § 107.50.

[***]    See the definitions of "Regulatory Capital", "Qualified Nonprivate Funds" and "Leverageable Capital" at 13 C.F.R. § 107.50.

-9-

Partner's Commitment to the Partnership, and the country (if other than the United States) in which such Private Limited Partner is a permanent resident.˙

(d)  Each Private Limited Partner which directly or indirectly owns or controls a limited partner's interest which constitutes ten percent (10%) or more of the partnership capital (as such term is used in the SBIC Act), represents to the Partnership and each Preferred Limited Partner and the SBA that its Commitment to the Partnership does not (i) constitute thirty-three percent (33%) or more of the partnership capital or (ii) exceed five percent (5%) of such Private Limited Partner's net worth or net assets available for benefits (in the case of any employee benefit, pension plan or government plan); provided, however, that in lieu of making this representation any Private Limited Partner may provide the Partnership with a separate written representation stating the percentage of the partnership capital which the limited partner's interest directly or indirectly owned or controlled by it constitutes, and the percentage of its net worth represented by such limited partner's interest.˙˙

(e)  Each Private Limited Partner represents to the Partnership, each Partner and the SBA that such Private Limited Partner has full power and authority to execute and deliver the Agreement and to act as a Private Limited Partner thereunder; the Agreement has been authorized by all necessary actions by it; the Agreement has been duly executed and delivered by it; and the Agreement is a legal, valid and binding obligation of it, enforceable against it according to its terms.

**4.9.  Notices With Respect to Representations by Private Limited Partners.**  (a) In the event that the representation made by a Private Limited Partner in Section 4.8(a), (b), (c) or (d) shall cease to be true (including any separate written representation previously provided by such Private Limited Partner to the Partnership as provided in such Sections), then such Private Limited Partner shall promptly provide the Partnership with a correct separate written representation as provided in each such Section.

(b)  The Partnership shall give each Preferred Limited Partner and the SBA prompt written notice of any notice received from any Private Limited Partner pursuant to Section 4.9(a) with respect to the representations of such Private Limited Partner.

## ARTICLE V

### Capital Accounts

**5.1.  Establishment of Capital Accounts.**  There shall be established on the books of the Partnership an Opening Capital Account for each Partner in accordance with the definitions and methods of allocation prescribed herein.

**5.2.  Times of Allocation to Capital Accounts.**  Allocations shall be made to Opening Capital Accounts at (i) the close of each fiscal year of the Partnership, (ii) upon the day prior to the date of the admission of an Additional Private Limited Partner, increase in any Private Limited Partner's

---

˙      See the definitions of "Private Capital" and "Regulatory Capital" at 13 C.F.R. § 107.50.

˙˙     See the definition of "Associate" at 13 C.F.R. § 107.50.

SBA Annex PS, Version 1.3 March 15, 1997

Commitment, admission of any Preferred Limited Partner or increase in the Commitment of any Preferred Limited Partner, (iii) upon the day prior to the dissolution of the Partnership, (iv) upon the date of a distribution and (v) on such other dates as the Agreement may provide. As of the dates set forth in clauses (i) through (v) of the preceding sentence, the allocations shall be made to the Opening Capital Account of each Partner in accordance with Section 5.3.

      **5.3. Allocations to Capital Accounts.** (a) As of the times set forth in Section 5.2, allocations shall be made to the Opening Capital Accounts of the Partners to arrive at each Partner's Closing Capital Account for such period in the following order and amounts:

      (i) The amount of any capital contributions paid by each Partner during such period shall be credited to such Partner's Opening Capital Account (other than capital contributions referred to in clause (i) of the definition of "Opening Capital Account" in Article I); provided, however, that any such capital contribution shall be credited to such Partner's Opening Capital Account on the later of the date such capital contribution was due or the date on which such capital contribution was actually received by the Partnership;

      (ii) The amount of any distributions made to each Partner during such period shall be debited against such Partner's Opening Capital Account;

      (iii) Net Profits shall be credited and Net Losses shall be debited to the Opening Capital Accounts of the Preferred Limited Partners in such amount and in such manner as is required to allocate to the Preferred Limited Partners the amount of the Prioritized Payments and Adjustments to which the Preferred Limited Partners are then entitled (determined as provided in the SBIC Act), to be apportioned among them as required under the SBIC Act;

      (iv) The balance of any Net Profits shall be credited and any Net Losses shall be debited to the Opening Capital Accounts of the Partners as follows:

      (A) to the Preferred Limited Partners in such amount as is required to allocate to the Preferred Limited Partners the amount of the Profit Participation to which the Preferred Limited Partners (or the SBA) are then entitled (determined as provided in the SBIC Act), to be apportioned among them as required under the SBIC Act; and

      (B) the balance to the General Partner and the Private Limited Partners to be apportioned among the General Partner and the Private Limited Partners as provided in the Agreement, or if no such provision is made in the Agreement, then as provided in the Act.

      (b) Notwithstanding the provisions of Section 5.3(a)(iv):

      (i) at such time as the Capital Account of the General Partner shall be reduced to an amount equal to the aggregate capital contributions of the General Partner (less all distributions to the General Partner), the balance of all Net Losses shall be allocated:

-11-

(A) first, to the remaining Capital Accounts of all of the Private Limited Partners which have not been reduced to zero (to be apportioned among them in accordance with their respective Partner's Percentages);

(B) second, after the Capital Accounts of all Private Limited Partners have been reduced to zero, then to the remaining Capital Accounts of the Preferred Limited Partners which have not been reduced to zero (to be apportioned among them according to their respective Capital Accounts); and

(C)  third, after the Capital Accounts of all Private Limited Partners and Preferred Limited Partners have been reduced to zero, then the balance to the General Partner.

(ii)  In the event that Net Losses are allocated in accordance with the foregoing clause (i), any Net Profits that are required to be allocated after such special allocation of Net Losses as provided in the foregoing clause shall be allocated:

(A) first, to the General Partner until the effect of the special allocation of Net Losses under clause (i)(C) is reversed and eliminated;

(B) second, to all of the Preferred Limited Partners to whom the allocation of such Net Losses has been made pursuant to clause (i)(B) until the effect of such special allocation of Net Losses has been reversed and eliminated; and

(C) third, to the Private Limited Partners to whom the allocation of such Net Losses has been made pursuant to clause (i)(A) until the effect of such special allocation of Net Losses has been reversed and eliminated.

(c)  To the extent not otherwise accomplished by the provisions of Sections 5.3(a) and (b), allocations shall be made to the Opening Capital Accounts of the Partners to effect any allocation of any item of income, gain, loss, deduction or credit to a Partner required by the Code.

## ARTICLE VI

### Distributions

**6.1.  Distributions to Partners.**  Distributions of cash and/or property (including Portfolio Securities), if any, shall be made at such times as the provisions of the SBIC Act require and at such other times permitted by the SBIC Act as are determined under the Agreement, in the following order and amounts:*

---

* 13 C.F.R. § 107.1520(g) and §§107.1540 through 107.1580 relate specifically to distributions.

-12-

(i)  to the Preferred Limited Partners in an amount up to any unpaid Prioritized Payments and Adjustments to which any Preferred Limited Partners are entitled (as determined under the SBIC Act), to be apportioned among them as required by the SBIC Act;

(ii)  if all amounts required to be distributed under clause (i) have been distributed, then at the election of the General Partner, to the Partners (whether or not any Partner is a taxpayer or is a tax exempt entity) in an amount up to the Maximum Tax Liability of the Partners, to be apportioned between the Preferred Limited Partners on the one hand and the General Partner and the Private Limited Partners on the other hand as required by the SBIC Act;

(iii)  if all amounts required to be distributed under clause (i) and clause (ii) (if the General Partner has elected to make a distribution under clause (ii)) have been distributed, then to the Partners in an amount up to the amount of the Retained Earnings Available for Distribution of the Partnership, to be apportioned among them in the following ratios:

(A)  if as of the date of the distribution there is Outstanding Leverage, then in the ratios set forth in the SBIC Act;* and

(B)  if as of the date of the distribution there is no Outstanding Leverage, then any amount to be distributed under this clause (iii) shall be apportioned to the Preferred Limited Partners up to the amount of any Profit Participation payable to the Preferred Limited Partners following the redemption of their Preferred Limited Partnership Interests for purposes of the SBIC Act, and the balance shall be apportioned to the General Partner and the Private Limited Partners;

(iv)  if all amounts required to be distributed under clauses (i), (ii) (if the General Partner has elected to make a distribution under clause (ii)), and (iii) have been distributed, then any additional amount shall be distributed and apportioned among the Partners in the following ratios:

(A)  if as of the date of the distribution there is Outstanding Leverage then in the ratios set forth in the SBIC Act; and

(B)  if as of the date of the distribution there is no Outstanding Leverage, then any amount to be distributed under this clause (iv) shall be distributed one hundred percent (100%) to the General Partner and the Private Limited Partners.

**6.2.  Distributions of Portfolio Securities.**  (a)  Subject to the provisions of the SBIC Act (including, without limitation, 13 C.F.R. § 107.1580) and the provisions of this Section 6.2, the Partnership may, as provided in the Agreement, at any time distribute Portfolio Securities in kind, pro rata between the Preferred Limited Partners on the one hand and the General Partner and Private Limited Partners on the other hand (based upon the respective amounts which each of the two groups would be

---

13 C.F.R. § 107.1560 sets forth the ratios, which vary depending on the amount of Outstanding Leverage.

-13-

entitled to receive if such distribution were made in cash) with respect to such distribution of each such Portfolio Security.[*]

(b) Distributions of Portfolio Securities in kind prior to the redemption of all Preferred Limited Partnership Interests shall only be made if such Portfolio Securities are Publicly Traded Securities. Distributions in kind of Portfolio Securities which are Earmarked Assets after the redemption of all Preferred Limited Partnership Interests shall be made only (i) if such Portfolio Securities are Publicly Traded Securities or (ii) if such Portfolio Securities are not Publicly Traded Securities, then with the prior written approval of the SBA (which shall include the approval of the valuation of such Portfolio Securities).

(c) At any time that any amount due to a Preferred Limited Partner whose Preferred Limited Partnership Interest has been redeemed for purposes of the SBIC Act has not been paid in full, the Partnership shall not make any distribution of Portfolio Securities in kind unless the Partnership distributes to such Preferred Limited Partner such amount, up to the amount of the unrealized appreciation on the Portfolio Securities to be distributed, as may be necessary to pay in full the amounts due to such Preferred Limited Partner pursuant to Section 4.4(c).

6.3. <u>Apportionment of Distributions Among the General Partner and Private Limited Partners.</u> All amounts to be distributed to the General Partner and the Private Limited Partners shall be apportioned among the General Partner and the Private Limited Partners as provided in the Agreement, or if no such provision is made in the Agreement, then as provided in the Act.

## ARTICLE VII

### Partners' Commitments

7.1. <u>Conditions to the Commitments of the General Partner and the Private Limited Partners.</u> (a) Notwithstanding any provision in the Agreement to the contrary, the General Partner and the Private Limited Partners shall be obligated to contribute any amount of their respective Commitments, not previously contributed to the Partnership, upon the earlier of (i) the completion of the liquidation of the Partnership or (ii) one year from the commencement of such liquidation if and to the extent that the other Assets of the Partnership have not been sufficient to permit as such time the redemption of all Outstanding Leverage, the payment of all amounts due with respect to the Outstanding Leverage as provided in the SBIC Act, and the payment of all other amounts owed by the Partnership to the SBA.

(b) Notwithstanding any provision in the Agreement to the contrary (except as expressly provided in this Section 7.1(b)), in the event that the Partnership is subject to restricted operations (as such term is used in the SBIC Act) and prior to the liquidation of the Partnership the SBA requires the

---

[*] Distributions of securities are required to be <u>pro rata</u> only between the Preferred Limited Partners and all other Partners as a group (13 C.F.R. § 107.1580(a)(2); the Agreement may permit non-<u>pro rata</u> distributions of securities among the General and Private Limited Partners.

-14-

General Partner and the Private Limited Partners to contribute any amount of their respective Commitments not previously contributed to the Partnership, the obligation to make such contributions shall not be subject to any conditions set forth in the Agreement other than limitations on the amount of capital which a Partner is obligated to contribute (i) within any specified time period or (ii) prior to any specified date.

(c)  The provisions of this Section 7.1 shall not apply to the Commitment of any Private Limited Partner whose obligation to make capital contributions has been terminated or who has withdrawn from the Partnership pursuant to a provision of this Article VII or any agreement, release, settlement or action under any provision of the Agreement which has been taken with the consent of the SBA as provided in Section 7.2.  No Private Limited Partner or General Partner shall have any right to delay, reduce or offset any capital contribution obligation to the Partnership called under this Section 7.1 by reason of any counterclaim or right to offset by such Partner or the Partnership against SBA or any Preferred Limited Partner.

**7.2.  Failure to Make Required Capital Contributions**.  (a)  The Partnership shall be entitled to enforce the obligations of each Partner to make the contributions to capital specified in the Agreement, and the Partnership shall have all rights and remedies available at law or equity in the event any such contribution is not so made.*

(b)  The Partnership shall give the SBA prompt written notice of any default by a Private Limited Partner in making any capital contribution to the Partnership required under the Agreement which continues beyond any applicable grace period specified in the Agreement.

(c)  The Partnership shall not enter into any agreement (whether oral or written), release or settlement with any Partner or take any action under any provision of the Agreement, which defers, reduces, or terminates the obligations of any such Partner to make contributions to the capital of the Partnership, or commence any legal proceeding or arbitration, which seeks any such deferral, reduction or termination of such obligation, and no such agreement, release, settlement or action taken under any provision of the Agreement shall be effective with respect to the Partnership or any such Partner, without the prior written (except as provided in Section 7.2(d)) consent of the SBA.

(d)  If the Partnership has given the SBA thirty (30) days prior written notice of any proposed legal proceeding, arbitration or other action under the provisions of the Agreement with respect to any default by a Private Limited Partner in making any capital contribution to the Partnership required under the Agreement and for which SBA consent is required as provided in Section 7.2(c), and the Partnership shall not have received written notice from the SBA that it objects to such proposed action within such thirty (30) day period, then SBA shall be deemed to have consented to such proposed Partnership action.

(e)  Section 7.2(c) shall be in effect at any time that the Partnership has Outstanding Leverage or owns Earmarked Assets, and shall not be in effect at any time the Partnership neither has Outstanding Leverage nor owns Earmarked Assets.

———————————

*      See also the rights of the SBA as a third party beneficiary under Section 4.7.

-15-

7.3.  <u>Termination of the Obligation to Contribute Capital</u>.  Notwithstanding any other provision of the Agreement (including, without limitation, the provisions of this Annex), any Private Limited Partner may elect to terminate its obligation in whole or in part to make a capital contribution required pursuant to the Agreement or upon demand by the General Partner shall no longer be entitled to make such capital contribution, in the event that such Private Limited Partner or the General Partner shall obtain an opinion of counsel to the effect that making such contribution would require such Private Limited Partner to withdraw from the Partnership pursuant to Sections 7.4 through 7.8.  Upon receipt by the General Partner of an opinion and notice as required under Section 7.9, unless cured within the period provided under Section 7.10, the Commitment of the Private Limited Partner delivering such opinion shall be deemed to be reduced by the amount of such capital contribution and the Agreement shall be deemed amended to reflect a corresponding reduction of aggregate Commitments to the Partnership.

7.4.  <u>Withdrawal by ERISA Regulated Pension Plans</u>.  Notwithstanding any other provision of the Agreement (including, without limitation, the provisions of this Annex), any Private Limited Partner that is an "employee benefit plan" within the meaning of, and subject to the provisions of, ERISA, may elect to withdraw from the Partnership in whole or in part, or upon demand by the General Partner shall withdraw from the Partnership in whole or in part, if either such Private Limited Partner or the General Partner shall obtain an opinion of counsel to the effect that, as a result of ERISA, (i) the withdrawal of such Private Limited Partner from the Partnership to such extent is required to enable such Private Limited Partner to avoid a violation of, or breach of the fiduciary duties of any person under (other than a breach of the fiduciary duties of any such person based upon the investment strategy or performance of the Partnership), ERISA or any provision of the Code related to ERISA or (ii) all or any portion of the assets of the Partnership (as opposed to such Private Limited Partner's partnership interest) constitute assets of such Private Limited Partner for purposes of ERISA and are subject to the provisions of ERISA to substantially the same extent as if owned directly by such Private Limited Partner.

7.5.  <u>Withdrawal by Government Plans Complying with State and Local Law</u>. Notwithstanding any other provision of the Agreement (including, without limitation, the provisions of this Annex), any Private Limited Partner that is a "government plan" within the meaning of ERISA may elect to withdraw from the Partnership in whole or in part, or upon demand by the General Partner shall withdraw from the Partnership in whole or in part, if either such Private Limited Partner or the General Partner shall obtain an opinion of counsel to the effect that as a result of state statutes, regulations, case law, administrative interpretations or similar authority applicable to such "government plan", the withdrawal of such Private Limited Partner from the Partnership to such extent is required to enable such Private Limited Partner or the Partnership to avoid a violation (other than a violation based upon the investment performance of the Partnership) of such applicable state law.

7.6.  <u>Withdrawal by Government Plans Complying with ERISA</u>. Notwithstanding any other provision of the Agreement (including, without limitation, the provisions of this Annex), any Private Limited Partner that is a "government plan" within the meaning of ERISA may elect to withdraw from the Partnership in whole or in part, if such "government plan" shall obtain an opinion of counsel to the effect that, as a result ERISA, (i) the withdrawal of such "government plan" from the Partnership to such extent would be required if it were an "employee benefit plan" within the meaning of, and subject to the provisions of, ERISA, to enable such "government plan" to avoid a violation of, or breach of the fiduciary duties of any person under (other than a breach of the fiduciary duties of any such person based upon the investment strategy or performance of the Partnership), ERISA or any provision of the Code

-16-

related to ERISA in the manner which would be required were it an "employee benefit plan" within the meaning of, and subject to the provisions of, ERISA, or (ii) all or any portion of the assets of the Partnership would constitute assets of such "government plan" for the purposes of ERISA, if such "government plan" were an "employee benefit plan" within the meaning of, and subject to the provisions of, ERISA and would be subject to the provisions of ERISA to substantially the same extent as if owned directly by such "government plan."

   7.7.   **Withdrawal by Tax Exempt Private Limited Partners.** Notwithstanding any other provision of the Agreement (including, without limitation, the provisions of this Annex), any Private Limited Partner that is exempt from taxation under Section 501(a) or 501(c)(3) of the Code may elect to withdraw from the Partnership in whole or in part, if such Private Limited Partner shall obtain an opinion of counsel to the effect that as a result of applicable statutes, regulations, case law, administrative interpretations or similar authority, the withdrawal of such Private Limited Partner from the Partnership to such extent is required to enable such tax exempt Private Limited Partner to avoid loss of its tax exempt status under Section 501(a) or 501(c)(3) of the Code.

   7.8.   **Withdrawal by Registered Investment Companies.** Notwithstanding any other provision of the Agreement (including, without limitation, the provisions of this Annex), any Private Limited Partner that is an "investment company" subject to registration under the Investment Company Act, may elect to withdraw from the Partnership in whole or in part, or upon demand by the General Partner shall withdraw from the Partnership in whole or in part, if either such Private Limited Partner or the General Partner shall obtain an opinion of counsel to the effect that, as a result of the Investment Company Act, the withdrawal of such Private Limited Partner from the Partnership to such extent is required to enable such Private Limited Partner or the Partnership to avoid a violation of applicable provisions of the Investment Company Act or the requirement that  the Partnership register as an investment company under the Investment Company Act.

   7.9.   **Notice and Opinion of Counsel.** In the event of the issuance of an opinion of counsel described in Sections 7.3 through 7.8, a copy of such opinion shall be sent by the General Partner to the SBA, together with the written notice of the election of the Private Limited Partner to which such opinion relates to terminate its obligation to make further capital contributions with respect to its Commitment or withdraw from the Partnership in whole or in part, or the written demand of the General Partner for such termination or withdrawal, as the case may be.  Any counsel rendering an opinion pursuant to Sections 7.3 through 7.8 shall be subject to the approval of the General Partner and the SBA, and any such opinion shall be satisfactory in form and substance to the General Partner and the SBA.

   7.10.   **Cure, Termination of Capital Contributions and Withdrawal.** Unless within ninety (90) days after the giving of written notice and satisfactory opinion of counsel, as provided in Section 7.9, the Private Limited Partner or the Partnership eliminates the necessity for termination of the obligation of such Private Limited Partner to make further capital contributions or for the withdrawal of such Private Limited Partner from the Partnership in whole or in part to the reasonable satisfaction of such Private Limited Partner and the General Partner, such Private Limited Partner shall withdraw from the Partnership in whole or in part to the extent required, effective as of the end of such ninety (90) day period.  Subject to the provisions of Section 7.2, in its discretion the General Partner may waive all or any part of the ninety (90) day cure period and cause such termination of capital contributions or withdrawal to be effective at an earlier date as set forth in such waiver.

-17-

7.11. <u>Distributions on Withdrawal</u>. Upon withdrawal pursuant to any provision of the Agreement, a Private Limited Partner shall have the rights to distributions set forth in the Act with respect to distributions to be made to limited partners upon withdrawal from a limited partnership; <u>provided</u>, <u>however</u>, that any distribution by the Partnership to a Private Limited Partner pursuant to its withdrawal pursuant to any provision of the Agreement shall be subject to the provisions of the SBIC Act and the prior written consent of the SBA.

## ARTICLE VIII

### Dissolution

The Partnership shall be dissolved on the later to occur of (i) the date of dissolution set forth in the Agreement or (ii) two years after all Preferred Limited Partners have withdrawn from the Partnership and all Outstanding Leverage shall have matured. The Agreement may provide that the General Partner and the Private Limited Partners may elect to dissolve the Partnership at any time after ten (10) years; <u>provided</u>, that (i) all Outstanding Leverage has been repaid or redeemed and (ii) all amounts due the Preferred Limited Partners, SBA, its agent or trustee have been paid.*

## ARTICLE IX

### Audit and Report

The Partnership shall maintain books and records in accordance with Treasury Regulation § 1.704 - 1(b), the provisions of the SBIC Act regarding financial accounts and reporting and generally accepted accounting principles (except as otherwise provided herein), and the financial statements of the Partnership shall be audited and certified as of the end of each fiscal year by a firm of independent certified public accountants selected by the Partnership.

## ARTICLE X

### Miscellaneous

10.1. <u>Assignability</u>. (a) The General Partner may not assign, pledge or otherwise grant a security interest in its interest in the Partnership or in this Agreement, except with the prior written consent of the SBA.

---

\* See 13 C.F.R. § 107.160(c)(1) which specifies the minimum duration for an SBIC in limited partnership form.

-18-

(b)  No transfer of any interest in the Partnership shall be allowed if the actions to be taken in connection with such transfer would (i) result in any violation of the SBIC Act, or (ii) result in a violation of any law, rule or regulation by the Partnership.

10.2.  **Amendments.**  This Annex shall not be amended except by an instrument in writing executed by all Preferred Limited Partners.  Any amendment of the Agreement which would (i) affect this Annex, (ii) affect the rights, obligations or liabilities of any Preferred Limited Partner or the SBA or (iii) reduce the Commitment of any Partner (other than as a result of (A) the operation of any provision of this Annex, (B) an agreement, settlement, release or other action under a provision of the Agreement taken as provided in Section 7.2 or (C) the assignment of such Partner's interest in the Partnership as permitted under this Annex and the Agreement) shall require the prior written consent of the SBA.

---

See 13 C.F.R. § 107.400 which requires SBA approval for any transfer which would result in any person owning more than a specified percentage of any class of partnership capital.

SBA Annex PS, Version 1.3 March 15, 1997

EXHIBIT A-1

### Instrument of Admission or Increase in
### Commitment for a Preferred Limited Partner

1. Partnership Name: _____
2. Date of Agreement of Limited Partnership: _____
3. Amount of Preferred Limited Partner's Capital
   Contribution: _____
4. Effective Date of Admission or Increase: _____
5. Rate of Prioritized Return: _____
6. Payment Dates: February 1, May 1, August 1, November 1 _____
7. Maturity Date: _____

The undersigned hereby agrees to become a Preferred Limited Partner in the partnership set forth above pursuant to terms of the above referenced Agreement of Limited Partnership and to be bound by and comply with the terms of such Agreement.

The capital contribution to be made by the undersigned as a Preferred Limited Partner shall be the amount set forth on item 3 above. Such capital contribution shall be made, and the undersigned shall be admitted as a Preferred Limited Partner, on the date set forth in item 4 above. The Prioritized Payment payable with respect to such capital contribution shall be at the rate set forth in item 5 above.

**An additional charge of 1% per annum shall be payable to the Preferred Limited Partner under the same terms and conditions as are applicable to the payment of Prioritized Payments.**

This Instrument shall have the same force and effect as if the undersigned parties had executed a counterpart of such Agreement of Limited Partnership. Capitalized terms used in this instrument shall have the respective meanings set forth in the above referenced Agreement of Limited Partnership.

**IN WITNESS WHEREOF** the undersigned have hereunto executed this instrument as of _____, ____.

**Partnership:**

_____
(Partnership Name)

By: _____
(Name of General Partner)

By: _____
(Signature of Officer or General Partner)

Name: _____
Title: _____

**Preferred Limited Partner:**

U. S. Small Business Administration
(Name of Preferred Limited Partner)

By: _____
(Signature of Authorized Person)

Name: _____
Title: Associate Administrator for Investment

Address: U.S. Small Business Administration
Investment Division, 409 Third Street, S.W.
Washington, DC 20416 _____

# EXHIBIT 3



ZERO
STAGE
CAPITAL

# Zero Stage Capital VI, L.P.
## *Fourth Quarter Report 2004*



**ZERO STAGE CAPITAL**

101 Main Street, 17th Floor • Cambridge, Massachusetts 02142-1519
Tel 617-876-5355 • Fax 617-876-1248 • www.ZeroStage.com

To:        Zero Stage Capital VI, L.P. Limited Partners

From:      Paul M. Kelley – Managing Partner and Chief Executive Officer

Subject:   Investor Statement for Fourth Quarter 2004

Unlike the successful investment performances in the other funds we have managed over the last 24 years, Zero Stage Capital VI, L.P. was a disappointing fund. This was caused by the confluence of a number of factors. The period 1999-2001 was one of the most difficult periods ever for the venture capital industry. In fact, the 1999 vintage year was the worst-performing vintage year since 1972 for all venture funds.

This period was even worse, and has been the single most difficult period ever, for both public and private investment performance in the telecommunications industry. In the interest of pursing opportunities aimed at the convergence of telecommunications and technology, and in other areas, Zero Stage made several investments that veered from its core competence and investment practices.

This was compounded by the existence of SBA leverage and poor decisions by several investment professionals at our firm during that period. The SBA has priority as an investor of preferred securities in the fund. Given the amount of the SBA's preferred interest, the equity investors in Zero Stage Capital VI, L.P. including the General Partner of the fund, will not receive any distributions from this fund. When investments in the fund began to deteriorate, Zero Stage Capital made personnel changes, worked diligently to turn the fund around and voluntarily stopped taking any management fee. We have not asked for nor have received any management fee for our work on Zero Stage Capital VI, L.P. since third quarter of 2003; and to date this forgone fee amounts to over $7 million dollars. Despite our efforts, the SBA has notified us of its decision to place Zero Stage Capital VI, L.P. in receivership status. The fund's assets will be liquidated in an orderly fashion. We expect that the receiver appointed by the SBA will continue to work with Zero Stage Capital.

CAMBRIDGE, MASSACHUSETTS • NEW HAVEN, CONNECTICUT • PORTLAND, MAINE • PROVIDENCE, RHODE ISLAND

*Zero Stage Capital V & VI, L.P. are Federal Licenses under the Small Business Investment Act of 1958.*

Many of you are also investors in our other active funds Zero Stage Capital V, L.P. and Zero Stage Capital VII, L.P. Zero Stage Capital V, L.P. is doing well, with an 8X multiple to date. That multiple will continue to increase with the recent IPO of ViaCell and the acquisition of Imaging Automation by Viisage. Zero Stage Capital VII, L.P. is also performing well, with a favorable interim IRR of -.53%, as compared to the most recently published Cambridge Associates benchmark of -15.13% at September 30, 2004.

Despite the problems incurred with Zero Stage Capital VI, L.P., we hope that you will continue to work with us in the future.

Best Regards,


Paul M. Kelley

# Financial Statements


ZERO STAGE CAPITAL
www.zerostage.com

**ZERO STAGE CAPITAL VI LIMITED PARTNERSHIP**
(A Massachusetts Limited Partnership)

**STATEMENTS OF ASSETS, LIABILITIES AND PARTNERS' EQUITY**
(UNAUDITED)

December 31, 2004 and September 30, 2004

## ASSETS

| | December 31, 2004 | September 30, 2004 |
|---|---|---|
| Investments at fair value (cost $62,677,073 and $81,159,346 at December 31, 2004 and September 30, 2004, respectively) | $  42,283,867 | $  51,046,841 |
| Cash and cash equivalents | 1,243,697 | 422,504 |
| Deferred financing costs, net | 1,462,979 | 1,554,415 |
| Portfolio interest receivable, net | 547,799 | 539,215 |
| Investment sale receivable (net of reserves) | 226,163 | - |
| Other receivables | 1,212 | - |
| Total assets | $45,765,717 | $  53,562,975 |

## LIABILITIES AND PARTNERS' EQUITY

| | December 31, 2004 | September 30, 2004 |
|---|---|---|
| Accounts payable and accrued expenses | $  96,447 | $  65,226 |
| Accrued management fee | 7,271,209 | 6,686,385 |
| Waived management fees | (7,271,209) | (6,686,385) |
| Due to related party | 82,837 | 45,216 |
| Total liabilities | 179,284 | 110,442 |
| Preferred limited partner's capital: | | |
| Preferred partner's capital | 93,205,000 | 93,205,000 |
| Accumulated operating loss | (916,378) | (479,109) |
| Accumulated unrealized loss on investments | (20,393,206) | (30,112,505) |
| Accumulated realized loss on investments | (26,308,983) | (9,160,853) |
| Total preferred limited partner's capital | 45,586,433 | 53,452,533 |
| Partners' equity: | | |
| Private partners' capital | 50,000,000 | 50,000,000 |
| Accumulated operating loss | (12,314,454) | (12,314,454) |
| Accumulated realized loss on investments | (37,177,712) | (37,177,712) |
| Accumulated unrealized loss on investments | - | - |
| Syndication costs | (507,834) | (507,834) |
| Total partners' equity | - | - |
| Total liabilities and partners' equity | $  45,765,717 | $  53,562,975 |

70

**ZERO STAGE CAPITAL VI LIMITED PARTNERSHIP**
(A Massachusetts Limited Partnership)

**STATEMENTS OF OPERATIONS**

(UNAUDITED)

For the quarter and year ended December 31, 2004

| | Quarter ended December 31, 2004 | Year ended December 31, 2004 |
|---|---|---|
| **Income:** | | |
| Interest and Fee Income, net | $ 1,189 | $ 19,653 |
| | | |
| **Expenses:** | | |
| Amortization expense | 91,436 | 365,745 |
| Professional and other fees | 120,548 | 456,465 |
| Management fees | - * | - * |
| Provison for uncollectible installment sale receivable | 252,717 | 252,717 |
| Uncollectible interest | (25,029) | 300,208 |
| Total expenses | 439,672 | 1,375,135 |
| Net loss from operations | (438,483) | (1,355,482) |
| Realized loss on investments | (17,148,129) | (38,190,925) |
| Unrealized gain (loss) on investments | 9,719,299 | 17,196,312 |
| Net Income | $ (7,867,313) | $ (22,350,095) |

* Zero Stage Capital Company, Inc., the management company, has agreed to waive the collection of all management fees due and payable
and any future fees until such time as the Limited Partners have received repayment of their capital contributions
to the Partnership.

ZERO STAGE CAPITAL VI LIMITED PARTNERSHIP
(A Massachusetts Limited Partnership)

STATEMENTS OF CASH FLOWS

(UNAUDITED)

For the quarter and year ended December 31, 2004

| | Quarter ended December 31, 2004 | Year ended December 31, 2004 |
|---|---|---|
| Cash from operating activities: | | |
| Net income | $ (7,867,313) | $ (22,350,095) |
| Adjustments to reconcile net income (loss) from operations to net cash provided (used) by operating activities: | | |
| Realized loss on investments | 17,148,129 | 38,190,925 |
| Unrealized (gain)loss on investments | (9,719,299) | (17,196,312) |
| Conversion of accrued interest to equity or notes | (16,445) | (16,445) |
| Reserve for other receivables | 252,717 | 252,717 |
| Amortization deferred financing costs | 91,436 | 365,744 |
| Net change in operating assets and liabilities: | | |
| Increase in portfolio interest receivable | (8,584) | 300,207 |
| Decrease in other assets | - | 2,855 |
| Increase in other receivables | - | (1,213) |
| Increase in accounts payable and accrued expenses | 31,224 | 50,747 |
| Net cash used for operating activities | (88,135) | (400,869) |
| Cash from investing activities: | | |
| Purchase of portfolio investments | (38,475) | (381,182) |
| Due to related party for portfolio company funding | 37,621 | 82,837 |
| Proceeds from sale of investments | 866,494 | 866,494 |
| Liquidation distributions from portfolio companies | 43,687 | 43,687 |
| Net cash received from investing activities | 909,327 | 611,836 |
| Net increase (decrease) in cash and cash equivalents | 821,192 | 210,967 |
| Cash and cash equivalents at beginning of period | 422,504 | 1,032,730 |
| Cash and cash equivalents at end of period | $ 1,243,696 | $ 1,243,697 |

**ZERO STAGE CAPITAL VI LIMITED PARTNERSHIP**
(A Massachusetts Limited Partnership)

**STATEMENT OF CHANGES IN PARTNERSHIP EQUITY**

(UNAUDITED)

For the quarter and year ended December 31, 2004

|  | General Partner | Limited Partners | Total |
|---|---|---|---|
| *Partners' equity at December 31, 2003* | $ - | $ - | $ - |
| Decrease in partners' equity resulting from increase in realized loss on investments | (97,400) | (9,642,601) | (9,740,001) |
| Increase in partners' equity resulting from decrease in unrealized loss on investments | 97,165 | 9,619,377 | 9,716,542 |
| Decrease in partners' equity resulting from net income from operations | 235 | 23,224 | 23,459 |
| *Partners' equity at March 31, 2004* | - | - | - |
| Decrease in partners' equity resulting from increase in realized loss on investments | (21,419) | (2,120,522) | (2,141,941) |
| Increase in partners' equity resulting from decrease in unrealized loss on investments | 26,045 | 2,578,459 | 2,604,504 |
| Decrease in partners' equity resulting from net loss from operations | (4,626) | (457,937) | (462,563) |
| *Partners' equity at June 30, 2004* | - | - | - |
| Increase in partners' equity resulting from unrealized gain on investments | - | - | - |
| Decrease in partners' equity resulting from net loss from operations | - | - | - |
| *Partners' equity at September 30, 2004* | - | - | - |
| Decrease in partners' equity resulting from unrealized loss on investments | - | - | - |
| Decrease in partners' equity resulting from net loss from operations | - | - | - |
| *Partners' equity at December 31, 2004* | $ - | $ - | $ - |

# EXHIBIT 4

**ANNUAL FINANCIAL REPORT**
**ON SBA FORM 468**
(PARTNERSHIP SBICs)

OMB Approval No 3245-0063
Expiration Date 7/31/2004

| | |
|---|---|
| NAME OF LICENSEE: | Zero Stage Capital VI, L.P. |
| LICENSE NUMBER: | 01/71-0372 |
| STREET ADDRESS: | 101 Main Street  - 17th Floor |
| CITY, STATE, AND ZIP CODE: | Cambridge, MA 02142-1519 |
| COUNTY: | Middlesex |
| EMPLOYER ID NUMBER: | 043437927 |
| FOR THE REPORTING PERIOD ENDED: | 03/31/2005          MONTHS: 3 |

A - TOTAL ASSETS AT COST          $10 MILLION OR MORE

B - OWNERSHIP          PRIVATELY OWNED NON-FINANCIAL CORP.

C - INDUSTRY CONCENTRATION          DIVERSIFIED

Please Note:  The estimated burden for completing this form is 17 hours per response.  You will not be required to respond to this information collection if a valid OMB approval number is not displayed.  If you have questions or comments concerning this estimate or other aspects of this information collection, please contact the US Small Business Administration, Chief, Administrative Information Branch, Washington, D.C. 20416 and/or Office of Management and Budget, Clearance Officer, Paperwork Reduction Project (3425-0063), Washington, D.C. 20503.

**SBA FORM 468**

(PARTNERSHIP SBICs)

**SHORT FORM**

OMB Approval No 3245-0063
Expiration Date 7/31/2004

| | |
|---|---|
| NAME OF LICENSEE: | Zero Stage Capital VI, L.P. |
| LICENSE NUMBER: | 01/71-0372 |
| STREET ADDRESS: | 101 Main Street - 17th Floor |
| CITY, STATE, AND ZIP CODE: | Cambridge, MA 02142-1519 |
| COUNTY: | Middlesex |
| EMPLOYER ID NUMBER: | 043437927 |
| FOR THE REPORTING PERIOD ENDED: | 03/31/2005      MONTHS: 3 |

A - TOTAL ASSETS AT COST          $10 MILLION OR MORE

B - OWNERSHIP          PRIVATELY OWNED NON-FINANCIAL CORP.

C - INDUSTRY CONCENTRATION          DIVERSIFIED

Please Note:  The estimated burden for completing this form is 15 hours per response.  You will not be required to respond to this information collection if a valid OMB approval number is not displayed.  If you have questions or comments concerning this estimate or other aspects of this information collection, please contact the US Small Business Administration, Chief, Administrative Information Branch, Washington, D.C. 20416 and/or Office of Management and Budget, Clearance Officer, Paperwork Reduction Project (3425-0063), Washington, D.C. 20503.

| | | STATEMENT OF FINANCIAL POSITION | | OMB Approval No. 3245-0063 |
| | | AS OF 03/31/2005 | | Expiration Date 7/31/2004 |
| | | (Amounts rounded to nearest dollar) | | |

Name of Licensee:  Zero Stage Capital VI, L.P.                                                           License No.:  01/71-0372

| **ASSETS** | | | | |
|---|---|---|---|---|
| **LOANS AND INVESTMENTS:** | **COST** | **UNREALIZED DEPRECIATION** | **UNREALIZED APPRECIATION** | **VALUE (1)** |
| Portfolio Securities: | (Col. 1) | (Col. 2) | (Col. 3) | (Col. 4) |
| 1  Loans | 582,836 | 291,419 | 0 | 291,417 |
| 2  Debt Securities | 2,870,000 | 1,435,000 | 0 | 1,435,000 |
| 3  Equity Securities | 55,071,580 | 25,728,562 | 6,922,993 | 36,266,011 |
| 4  **TOTAL PORTFOLIO SECURITIES:** | **58,524,416** | **27,454,981** | **6,922,993** | **37,992,428** |
| Assets Acquired in Liquidation of Portfolio Securities: | | | | |
| 5  Receivables from Sale of Assets Acquired | | | | 0 |
| 6  Assets Acquired | | | | 0 |
| 7  **TOTAL ASSETS ACQUIRED** | | **0** | | **0** |
| 8  Operating Concerns Acquired | | | | 0 |
| 9  Notes and Other Securities Received | | | | 0 |
| 10  **TOTAL LOANS AND INVESTMENTS** | **58,524,416** | **27,454,981** | **6,922,993** | **37,992,428** |
| 11  Less Current Maturities | | | | |
| 12  Loans and Investments Net of Current Maturities | | | | 37,992,428 |
| Investment in 301(d)  Licensee (2): | | | | |
| 13  Name | | | | |
|     License No. | | | | |

| **CURRENT ASSETS** | | | |
|---|---|---|---|
| 14  Cash and Cash Equivalents | 1,920,884 | | |
| 15  Invested Idle Funds | 0 | 1,920,884 | |
| 16  Interest and Dividends Receivable | 547,799 | | |
| 17  Notes and Accounts Receivable | 0 | | |
| 18  Receivables from Parent or Other Associates | 1,212 | | |
| 19  Less:  Allowance for Losses (lines 16, 17 & 18) | | 549,011 | |
| 20  Current Maturities of Portfolio Securities | | | |
| 21  Current Maturities of Assets Acquired | | | |
| 22  Current Maturities of Operating Concerns Acquired | | | |
| 23  Current Maturities of Other Securities | | | |
| 24  Other (specify)  Deferred Financing Cost | | 1,371,543 | |
| 25  Other (specify)  Invest. Sale receivable(net of reserve allow | | 226,163 | 4,067,601 |

| **OTHER ASSETS** | | | |
|---|---|---|---|
| 26  a.  Furniture and Equipment | | | |
|     b.  Less:  Accumulated Depreciation | | 0 | |
| 27  Other (specify) | | 0 | |
| 28  Other (specify) | | | 0 |
| 29  **TOTAL ASSETS** | | | **42,060,029** |

(1) Column Headings apply to items 1 through 12 only. (Cost - Unrealized Depreciation + Unrealized Appreciation = Value)
(2) Note to item 13 should include percent owned, cost basis and changes resulting from equity method of accounting.

| STATEMENT OF FINANCIAL POSITION<br>AS OF 03/31/2005<br>(Amounts rounded to nearest dollar) | OMB Approval No. 3245-0063<br>Expiration Date 7/31/2004 |
|---|---|
| Name of Licensee:  Zero Stage Capital VI, L.P. | License No.:  01/71-0372 |

## LIABILITIES AND CAPITAL
### LONG-TERM DEBT (Net of Current Maturities)

30 Notes and Debentures Payable to or
   Guaranteed by SBA ... 0
31 Notes and Debentures Payable to Others ... 0

### CURRENT LIABILITIES

32 Accounts Payable ... 60,866
33 Due to Parent or Other Associates ... 0
34 Accrued Interest Payable
35 Accrued Taxes Payable
36 a. Current Maturities of Line 30
   b. Current Maturities of Line 31
37 Distributions Payable
38 Short-term Notes Payable/Lines of Credit ... 0
39 Other (specify)   Accrued management fee ... 7,749,972
40 Other (specify)   Waived Management fees ... -7,749,972 ... 60,866

### OTHER LIABILITIES

41 Deferred Credits
42 Other (specify)   Due to Related Party ... 82,837
43 Other (specify) ... 82,837
**44 TOTAL LIABILITIES** ... 143,703

### REDEEMABLE SECURITIES (guaranteed or purchased by SBA)

45 a. 4% Redeemable Preferred Securities (301(d) Licensees only)
   b. Cumulative Unpaid 4% Distributions
46 a. Participating Securities ... 93,205,000
   b. Earned Prioritized Payments Allocated for Distribution
   c. SBA Profit Participation Allocated for Distribution ... 0 ... 93,205,000
**47 TOTAL REDEEMABLE SECURITIES** ... 93,205,000

### PARTNERS' CAPITAL

48 Private Partners' Contributed Capital:
   a. General Partner(s) ... 500,000
   b. Limited Partner(s) ... 49,500,000 ... 50,000,000
49 Other (specify)   Syndication Costs ... -507,834
50 Unrealized Gain (Loss) on Securities Held ... -20,531,988
51 Non-Cash Gains/Income ... 2,624,949
52 Undistributed Net Realized Earnings
   (Partners' Earned Capital) ... -82,873,801
53 Undistributed Realized Earnings (51 plus 52) ... -80,248,852
**54 TOTAL PARTNERS' CAPITAL** ... -51,288,674

**55 TOTAL LIABILITIES, REDEEMABLE SECURITIES AND
   PARTNERS' CAPITAL (lines 44 plus 47 plus 54)** ... 42,060,029

SBA Form 468.2 (6/98) Previous editions obsolete

| STATEMENT OF OPERATIONS REALIZED<br>FOR       MONTHS ENDED    1/2005<br>(Amounts rounded to nearest dollar) | OMB Approval No. 3245-0063<br>Expiration Date  7/31/2004 |
|---|---|

| Name of Licensee:  Zero Stage Capital VI, L.P. | License No.:  01/71-0372 |
|---|---|

### INVESTMENT INCOME

| | |
|---|---|
| 1  Interest Income | 0 |
| 2  Dividend Income | 0 |
| 3  Income (Loss) from Investments in Partnerships/Flow-through Entities | |
| 4  Income (Loss) from Investment in Section 301(d) Licensee | |
| 5  Fees for Management Services | |
| 6  Application, Closing and Other Fees | |
| 7  Interest on Cash Equivalents and Invested Idle Funds | 4,771 |
| 8  Income from Assets Acquired in Liquidation of<br>    Loans and Investments (net of $          Expenses) | |
| 9  Other Income | 0 |
| **10  GROSS INVESTMENT INCOME** | **4,771** |

### EXPENSES

| | |
|---|---|
| 11  Interest Expense | 0 |
| 12  Commitment Fees | 0 |
| 13  Other Financial Costs | 0 |
| 14  Partners' Compensation and Benefits | |
| 15  Employee Compensation and Benefits | |
| 16  Investment Advisory and Management Services | 0 |
| 17  Partners' Meetings | 0 |
| 18  Advertising and Promotion | |
| 19  Appraisal and Investigation | |
| 20  Communication | |
| 21  Travel | |
| 22  Cost of Space Occupied | |
| 23  Depreciation and Amortization | 91,436 |
| 24  Insurance | 11,079 |
| 25  Payroll Taxes | |
| 26  Other Taxes | |
| 27  Provision for Losses on Receivables (excluding loans receivable) | -28,337 |
| 28  Legal Fees | 85,329 |
| 29  Audit and Examination Fees | 0 |
| 30  Miscellaneous Expenses (attach schedule) | 39,101 |
| **31  TOTAL EXPENSES** | **198,608** |
| **32  NET INVESTMENT INCOME (LOSS)** | **-193,837** |
| **33  NET REALIZED GAIN (LOSS) ON INVESTMENTS (1)** | **-3,337,488** |
| **34  NET INCOME (LOSS) BEFORE NONRECURRING ITEMS** | **-3,531,325** |
| 35  Extraordinary Item | 0 |
| 36  Cumulative Effect of Change in Accounting Principle | |
| **37  NET INCOME (LOSS)** | **-3,531,325** |

(1) Provide supporting detail for all realized gains and losses on Page 14P of this form.

| STATEMENT OF CASH FLOWS<br>FOR   3 MONTHS ENDED  03/31/2005<br>(page 1 of 2)<br>(Amounts rounded to nearest dollar) | OMB Approval No. 3245-0063<br>Expiration Date  7/31/2004 |
|---|---|

| Name of Licensee:  Zero Stage Capital VI, L.P. | License No.:  01/71-0372 |
|---|---|

**OPERATING ACTIVITIES:**

**Cash Inflows:**

| | |
|---|---:|
| 1 Interest Received from Portfolio Concerns | 0 |
| 2 Dividends Received from Portfolio Concerns | 0 |
| 3 Other Income Received from Portfolio Concerns | 0 |
| 4 Management Services and Other Fees Received | |
| 5 Interest on Cash Equivalents and Invested Idle Funds | 4,771 |
| 6 Cash Received from Assets Acquired in Liquidation | |
| 7 Other Operating Cash Receipts | 0 |

**Cash Outflows:**

| | |
|---|---:|
| 8 Interest Paid | 0 |
| 9 Commitment Fees and Other Financial Costs | 0 |
| 10 Investment Advisory and Management Fees | 0 |
| 11 Partners' and Employees' Compensation and Benefits | |
| 12 Operating Expenditures (excluding compensation and benefits) | 171,091 |
| 13 Other Operating Cash Disbursements | 0 |
| **14 NET CASH PROVIDED BY (USED IN) OPERATING ACTIVITIES** | **-166,320** |

**INVESTING ACTIVITIES:**

**Cash Inflows:**

| | |
|---|---:|
| 15 Loan Principal Payments Received from Portfolio Concerns | 0 |
| 16 Returns of Capital Received from Portfolio Concerns | 0 |
| 17 Net Proceeds from Disposition of Portfolio Securities | 1,315,170 |
| 18 Liquidation of Idle Funds Investments | |
| 19 Other (Specify)   Invest. Install sale receivable proceeds | 28,337 |

**Cash Outflows:**

| | |
|---|---:|
| 20 Purchase of Portfolio Securities | 500,000 |
| 21 Loans to Portfolio Concerns | |
| 22 Idle Funds Investments | |
| 23 Other (Specify) | 0 |
| **24 NET CASH PROVIDED BY (USED IN) INVESTING ACTIVITIES** | **843,507** |

**FINANCING ACTIVITIES:**

**Cash Inflows:**

| | |
|---|---:|
| 25 Proceeds from Issuance of SBA-Guaranteed Debentures | |
| 26 Proceeds from Issuance of Participating Securities | 0 |
| 27 Proceeds from Non-SBA Borrowing | 0 |
| 28 Partners' Capital Contribution | 0 |
| 29 Other (Specify) | |

**Cash Outflows:**

| | |
|---|---:|
| 30 SBA Leverage Fees | 0 |
| 31 Principal Payments on SBA-Guaranteed Debentures | |
| 32 Principal Payments on Non-SBA Borrowing | 0 |
| 33 Redemption of Participating Securities | |
| 34 Redemption of 4% Preferred Securities | |
| 35 Redemption of Private Partnership Interests | |
| 36 Prioritized Payments Paid | |
| 37 Other Distributions Paid | |
| 38 Other (Specify) | 0 |
| **39 NET CASH PROVIDED BY (USED IN) FINANCING ACTIVITIES** | **0** |

| STATEMENT OF CASH FLOWS<br>FOR  3  MONTHS ENDED  03/31/2005<br>(page 2 of 2)<br>(Amount rounded to nearest dollar) | OMB Approval No. 3245-0063<br>Expiration Date  7/31/2004 |
|---|---|
| Name of Licensee:  Zero Stage Capital VI, L.P. | License No.:  01/71-0372 |

40 INCREASE (DECREASE) IN CASH AND CASH EQUIVALENTS                              677,187

41 CASH AND CASH EQUIVALENTS AT BEGINNING OF PERIOD                          1,243,697

**42 CASH AND CASH EQUIVALENTS AT END OF PERIOD (line 14, page 2P)**          1,920,884


**RECONCILIATION OF NET INCOME (LOSS) TO NET CASH PROVIDED
BY (USED IN) OPERATING ACTIVITIES:**

43 Net Income (Loss) (page 4P, line 37)                                          -3,531,325

**Adjustments to Reconcile Net Income (Loss) to Net
Cash Provided by (Used in) Operating Activities:**

44 Depreciation and Amortization                                                    91,436

45 Provision for Losses on Accounts Receivable                                      -28,337

46 (Income) Loss from Investments in Partnerships/Flow-through
    Entities (excluding income received in cash)                          0

47 Realized (Gains) Losses on Investments                                        3,337,488

48 Other (Specify)                                                                        0

**Changes in Operating Assets and Liabilities
Net of Noncash Items:**

49 (Increase) Decrease in Interest and Dividends Receivable                               0

50 (Increase) Decrease in Other Current Assets                                            0

51 Increase (Decrease) in Accounts Payable                                          -35,582

52 Increase (Decrease) in Accrued Interest Payable                                        0

53 Increase (Decrease) in Accrued Taxes Payable

54 Increase (Decrease) in Distributions Payable

55 Increase (Decrease) in Other Current Liabilities                                       0

56 Other (Specify)                                                                        0

57 Other (Specify)                                                                        0


**58  NET CASH PROVIDED BY (USED IN) OPERATING ACTIVITIES  (total must**        -166,320
**agree with line 14, page 5P)**


**Supplemental disclosure of non-cash financing and investing activities may be required.  See FASB
Statement No. 95, paragraph 32.**

| | STATEMENT OF PARTNERS' CAPITAL<br>AS OF 03/31/2005<br>(page 1 of 2)<br>(Amount rounded to nearest dollar) | OMB Approval No. 3245-0063<br>Expiration Date 7/31/2004 |
|---|---|---|
| Name of Licensee:  Zero Stage Capital VI, L.P. | | License No.:  01/71-0372 |

| PART I.    PRIVATE PARTNERS' CONTRIBUTED CAPITAL | GENERAL<br>PARTNER(S)<br>(page 3P, line 48a) | LIMITED<br>PARTNER(S)<br>(page 3P, line 48b) | TOTAL |
|---|---|---|---|
| **1  BALANCE AT BEGINNING OF PERIOD** | 500,000 | 49,500,000 | 50,000,000 |
| **2  ADDITIONS:** | | | |
| a. Partnership interests sold for cash | 0 | 0 | 0 |
| b. Partnership interests issued for services rendered | | | |
| c. Partnership interests issued for non-cash assets | 0 | 0 | 0 |
| d. Capitalization of Retained Earnings Available for Distribution | | | |
| e. Other credits (specify) | | | |
| 3  Total additions (sum of 2a through 2e) | 0 | 0 | 0 |
| 4  Subtotal (line 1 plus line 3) | 500,000 | 49,500,000 | 50,000,000 |
| **5  DEDUCTIONS:** | | | |
| a. Complete liquidation of partnership interests | | | 0 |
| b. Partial liquidation of partnership interests | | | |
| c. Partial liquidation of all partnership interests | | | |
| d. Other debits (specify) | | | |
| 6  Total deductions (sum of 5a through 5d) | 0 | | 0 |
| **7  BALANCE AT END OF PERIOD (line 4 minus line 6)--<br>total must agree with lines 48a and 48b, page 3P** | 500,000 | 49,500,000 | 50,000,000 |

| PART II.    UNDISTRIBUTED REALIZED EARNINGS | NON-CASH<br>GAINS/<br>INCOME<br>(1) | UNDISTRIBUTED<br>NET REALIZED<br>EARNINGS<br>(2) | UNDISTRIBUTED<br>REALIZED<br>EARNINGS<br>(1)+(2) |
|---|---|---|---|
| **1  BALANCE AT BEGINNING OF PERIOD** | 2,624,949 | -79,342,476 | -76,717,527 |
| **2  ADDITIONS:** | | | |
| a. Net investment income | 0 | -193,837 | -193,837 |
| b. Realized gain (loss) on investments | | -3,337,488 | -3,337,488 |
| c. Gain on appreciation of securities distributed in kind | | 0 | 0 |
| d. Other (specify) | 0 | 0 | 0 |
| 3  Total additions (sum of 2a through 2d) | 0 | -3,531,325 | -3,531,325 |
| 4  Subtotal (line 1 plus line 3) | 2,624,949 | -82,873,801 | -80,248,852 |
| **5  DEDUCTIONS:** | | | |
| a. Cash Distributions | | | 0 |
| b. Distributions allocated but not paid | | | 0 |
| c. In-Kind Distributions (at fair value) | | | 0 |
| d. Capitalization of Retained Earnings Available for Distribution | | | 0 |
| e. Other (specify) | 0 | 0 | 0 |
| 6  Total deductions (sum of 5a through 5e) | 0 | 0 | 0 |
| 7  Total before collection of non-cash gains/income(line 4 minus line 6) | 2,624,949 | -82,873,801 | -80,248,852 |
| **8  Collection of non-cash gains/income** | 0 | 0 | |
| **9  BALANCE AT END OF PERIOD (line 7 plus line 8)--<br>totals must agree with lines 51, 52 and 53, page 3P** | 2,624,949 | -82,873,801 | -80,248,852 |

| STATEMENT OF PARTNERS' CAPITAL<br>AS OF 03/31/2005<br>(page 2 of 2)<br>(Amount rounded to nearest dollar) | OMB Approval No. 3245-0063<br>Expiration Date 7/31/2004 |
|---|---|

Name of Licensee:  Zero Stage Capital VI, L.P.    License No.:  01/71-0372

**PART III.    UNREALIZED GAIN (LOSS) ON SECURITIES HELD**

1  BALANCE AT BEGINNING OF PERIOD

-20,393,206

2  INCREASE (DECREASE) IN UNREALIZED APPRECIATION

  a. Portfolio securities:

    (i) Increases ........................................... 3,840

    (ii) Decreases due to revaluation of securities ........... -1,168,334

    (iii) Decreases due to sale of securities ................ 0

    (iv) Decreases due to charge-off of securities ........... 0    -1,164,494

  b. Assets acquired in liquidation of portfolio securities

  c. Operating concerns acquired

  d. Notes and other securities received

3  TOTAL (sum of 2a through 2d)

-1,164,494

4  Subtotal (line 1 plus line 3)

-21,557,700

5  (INCREASE) DECREASE IN UNREALIZED DEPRECIATION

  a. Portfolio securities

    (i) Increases ........................................... -1,335,733

    (ii) Decreases due to revaluation of securities ........... 0

    (iii) Decreases due to sale of securities/repayment of principal ... 2,361,445

    (iv) Decreases due to charge-off of securities ........... 0    1,025,712

  b. Assets acquired in liquidation of portfolio securities

  c. Operating concerns acquired

  d. Notes and other securities received

6  TOTAL (sum of 5a through 5d)

1,025,712

7  UNREALIZED GAIN (LOSS) ON SECURITIES HELD --<br>   total must agree with line 50, page 3P

-20,531,988

| I. RETAINED EARNINGS AVAILABLE FOR DISTRIBUTION<br>II. REGULATORY AND LEVERAGEABLE CAPITAL<br>AS OF 03/31/2005<br>(Amounts rounded to nearest dollar) | OMB Approval No. 3245-0063<br>Expiration Date 7/31/2004 |
|---|---|
| Name of Licensee:  Zero Stage Capital VI, L.P. | License No.:  01/71-0372 |

## PART I.  RETAINED EARNINGS AVAILABLE FOR DISTRIBUTION OR CAPITALIZATION

| | |
|---|---:|
| 1 Undistributed Net Realized Earnings (line 52, page 3P) | -82,873,801 |
| 2 LESS:  Unrealized Depreciation (line 10, column 2, page 2P) | 27,454,981 |
| 3 ADD:  Cumulative Unpaid Distributions on 4% Redeemable<br>   Preferred Securities--Section 301(d) Licensees only (line 45b, page 3P) | |
| **4 RETAINED EARNINGS AVAILABLE FOR DISTRIBUTION OR CAPITALIZATION** | -110,328,782 |

## PART II.  SCHEDULE OF REGULATORY AND LEVERAGEABLE CAPITAL

| | | |
|---|---:|---:|
| 1 Private Partners' Contributed Capital (line 48, page 3P) | | 50,000,000 |
| 2 ADD:  Unfunded binding commitments from Institutional Investors | | 0 |
| 3 LESS:  Regulatory Deductions | | |
| a. Organization Expenses Not Approved by SBA (1) | | |
| b. Partnership Interests Issued for Services | 0 | |
| c. Partnership Interests Issued for Non-cash Assets (unless approved by<br>   SBA for inclusion in Regulatory Capital or converted to cash) | 0 | |
| d. Investment in 301(d) Licensee | | |
| e. Other (specify) | | |
| 4 Total Regulatory Deductions (Sum of 3a through 3e) | | 0 |
| 5 Other Adjustments (specify) | | 0 |
| **6 REGULATORY CAPITAL (sum of lines 1, 2, 4, and 5)** | | 50,000,000 |
| 7 LESS:  Unfunded binding commitments from Institutional Investors | | 0 |
| 8 LESS:  Non-cash assets included in Regulatory Capital, other than<br>   eligible investments in Small Concerns | | |
| 9 LESS:  Other deductions (specify) | | |
| **10 LEVERAGEABLE CAPITAL (sum of lines 6 through 9)** | | 50,000,000 |

## PART IIa.  ADJUSTMENT TO REGULATORY CAPITAL FOR OVERLINE PURPOSES

> **COMPLETE THIS PART IIa ONLY IF LICENSEE WISHES TO INCREASE ITS OVERLINE LIMITATION BY THE AMOUNT OF ITS NET UNREALIZED GAINS ON MARKETABLE SECURITIES PURSUANT TO 13 CFR 107.740 (c). NOTE:  Licensee must have positive Retained Earnings Available for Distribution at the time the increased overline limit is established.**

| | |
|---|---:|
| **11 REGULATORY CAPITAL (Part II, line 6)** | 50,000,000 |
| **12 ADD:  Net Unrealized Gains on Marketable Securities (2)** | 0 |
| **13 ADJUSTED REGULATORY CAPITAL FOR OVERLINE PURPOSES (line 11 plus line 12)** | 50,000,000 |

(1)  Deduct only those organizational expenses which were not accepted as reasonable by SBA.
(2)  As defined in 13 CFR 107.740(c). Attach a schedule showing the following for each marketable security:  name of Small
      Business Concern, Market in which traded, names of market makers for companies not listed on a stock exchange or NASDAQ.
      class of security, cost, valuation, and unrealized gain or loss in accordance with the requirements of Section 107.740(c).

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

SCHEDULE OF COMMITMENTS
AS OF 03/31/2005

License No.: 01/71-0372

Name of Licensee: Zero Stage Capital VI, L.P.

| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|
| Name of Small Business | Amount of Commitment | Date Made | Expiration Date | Loan, Debt, or Equity? | New investment or follow-on? | If follow-on, is existing investment a Portfolio Security, Asset Acquired, or Operating Concern Acquired? |
| No Information | | | | | | |
| | | | | | | |

SBA Form 468.2 (6/98) Previous editions obsolete

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

SCHEDULE OF GUARANTEES
AS OF 03/31/2005

Name of Licensee:  Zero Stage Capital VI, L.P.

License No.: 01/71-0372

| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|
| Name of Small Business | Guarantee Amount | Date Made | Expiration Date | Name of Guaranteed Party | Is guarantee collateralized? If so, by what? | Description of underlying obligation of Small Business |
| FurnitureFan | 506,730 | 08/15/2001 | 04/01/2014 | Mass. Business Develop. Corp | No | Amortizing loan - guarantee amount represents the balance of the loan plus accrued interest. |
| Intersense | 80,000 | 06/15/2001 | | Intersense-CEO | No | Guarantee of CEO severance obligation |
| TOTAL | $586,730 | | | | | |

SCHEDULE 1

SCHEDULE OF LOANS AND INVESTMENTS
AS OF 03/31/2005

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

Name of Licensee: Zero Stage Capital VI, L.P.

License No.: 01/71-0372

| Description of Investment | See Note (1) Below | | | Security Type- See Note (2) Below | | | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by General Partners |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | | 2 | | 3 | | 4 | 5 | 6 | 7 | 8 | 9 |
| | (a) | (b) | (c) | (a) | (b) | (c) | | | | | | |

**Amgen, Inc.**
Employer ID No.:     LMI Investment:
Invest Date: 12/13/2000    Invest Amt: 1,000,000
No. Shares: 92,960
NAICS Code: 541710    Address: Amgen Center Thousand Oaks, CA 91320-1799
Type of Shares: Common stock, 92,960 shares
Other Comments: This investment was the sale and conversion of Kinetix Pharmaceuticals to Amgen, Inc.

Row values: S E P EC | 11,869 | 0 | | 11,869 | 52,759 | 64,628

**Axxis Inc.** (Formally Fuelspot.com)
Employer ID No.: Applied For    LMI Investment:
Invest Date: 07/16/1999    Invest Amt: 125,000
No. Shares: 1,594,250    % Total Equity: 10.2
NAICS Code: 514191    Address: 1819 Denver West Drive, Bld 26-Suite 225 Golden, CO 80401-
Type of Shares: 952,300 shares of common stock  Series A Preferred, 2,254,562 shares  Series AA Preferred, 726770 shares
Series B Preferred Stock, 1,630,435 sh @ $1.84
Series C Preferred Stock, 7,194,244 @ $0.0695/sh
Equity Features: Warrant to purchase common stock based on formula, Exp. 6/21/05

Row values: P S E NPR EC | 7,624,999 | 0 | | 7,624,999 | -6,738,596 | 886,403

**Bluestreak.com**
Employer ID No.:    LMI Investment:
Invest Date: 12/22/1999    Invest Amt: 3,615,000
No. Shares: 1,549,355    % Total Equity: 15.56
NAICS Code: 541890    Address: 221 Third Street Newport, RI 02840-
Type of Shares: Series B Preferred, 1,049,893 shares
Series C Preferred Stock, 499,462 sh @ $6.75727/sh
Equity Features: Warrants to purchase 17,292 shares common stock @ $0.01/sh
Warrants to purchase 42,188 shares Series C Preferred @ $12/sh, exp 9/22/05

Row values: S E NP EC | 6,990,000 | 0 | | 6,990,000 | 0 | 6,990,000

SBA Form 468.2 (6/98) Previous editions obsolete

SCHEDULE 1

SCHEDULE OF LOANS AND INVESTMENTS
AS OF 03/31/2005

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

License No.: 01/71-0372

Name of Licensee: Zero Stage Capital VI, L.P.

| 1 | 2 | | | 3 | | | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below | | | Security Type- See Note (2) Below | | | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by General Partners |
| | (a) | (b) | (c) | (a) | (b) | (c) | | | | | | |
| **Digital Angel Corporation (Merger with Outer)** | | S | | E | NP | EC | 5,815,978 | -4,652,657 | Sale of 297,560 shs | 1,163,321 | -834,972 | 328,349 |
| Employer ID No.: | | | LMI Investment: | | | | | | | | | |
| Invest Date: 01/22/2004    Invest Amt: 5,815,978 | | | | | | | | | | | | |
| No. Shares: 74,400 | | | | | | | | | | | | |
| NAICS Code: 513390    Address: 490 Villaume Avenue South St. Paul, MN 55075- | | | | | | | | | | | | |
| Type of Shares: Common stock, 371,960 shs SOLD 297,560 shs common stock | | | | | | | | | | | | |
| Equity Features: 74,400 shares held back in escrow | | | | | | | | | | | | |
| Other Comments: Exchange of Outerlink shares into Digital Angel -shares due to merger – All Outerlink warrants cancelled per merger agreement | | | | | | | | | | | | |
| **First Service Network (formally ServiceQwik** | | S | | E | NP | EC | 5,876,525 | 0 | | 5,876,525 | -5,876,525 | 0 |
| Employer ID No.: | | | LMI Investment: | | | | | | | | | |
| Invest Date: 01/12/2001    Invest Amt: 5,540,000 | | | | | | | | | | | | |
| No. Shares: 766,470    % Total Equity: 3.5 | | | | | | | | | | | | |
| NAICS Code: 541990    Address: 9690 Deerco Road Timonium, MD 21093- | | | | | | | | | | | | |
| Type of Shares: Series A Preferred, 250,000 shares    Series B Preferred, 5,164,699 shares 1 for 10 stock split | | | | | | | | | | | | |
| Equity Features: Warrant to purchase 494,000 shares of Series B @ $1.052631579/sh, Exp. 7/11/01    Warrant to purchase 190,000 shares of Series B @ $1.052631579/sh, Exp 1/11/03    Warrant to purchase 190,000 shares of Series B Preferred @ $1.052631579/sh, Exp 8/31/03    Warrant to purchase 95,000 shares Series B Preferred @ $1.052631579/sh, Exp. 11/7/03 | | | | | | | | | | | | |
| **FurnitureFan.com, Inc.** | | D | | S | D | NP | EC | 35,000 | 0 | | 35,000 | -17,500 | 17,500 |
| Employer ID No.: | | | LMI Investment: | | | | | | | | | |
| Invest Date: 11/03/2003    Invest Amt: 35,000    Interest: 12% | | | | | | | | | | | | |
| Mat. Date: 05/05/2004 | | | | | | | | | | | | |
| NAICS Code: 514191    Address: 172 North Road Sudbury, MA 01776- | | | | | | | | | | | | |

SBA Form 468.2 (6/98) Previous editions obsolete

Page 12P

SCHEDULE 1

**SCHEDULE OF LOANS AND INVESTMENTS**
**AS OF 03/31/2005**

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

License No.: 01/71-0372

Name of Licensee:  Zero Stage Capital VI, L.P.

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below (a) (b) (c) | Security Type- See Note (2) Below (a) (b) (c) | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by General Partners |
| FurnitureFan.com Employer ID No.: Invest Date: 04/01/2003 Mat. Date: 10/01/2003 NAICS Code: 514191 | D S LMI Investment: Invest Amt: 130,000 Address: 142 North Rd Sudbury, MA 01776- | D NP EC Interest: 12% | 130,000 | 0 | | 130,000 | -65,000 | 65,000 |
| FurnitureFan.com Employer ID No.: Invest Date: 01/21/2005 NAICS Code: 514191 Other Comments: This was a payment of th MBDC loan under guarantee agreement | S LMI Investment: Invest Amt: 500,000 Address: 142 North Rd. Sudbury, MA 01776- | L NP EC | 0 | 500,000 | Payment twds MBDC loan-guarantee | 500,000 | -250,000 | 250,000 |
| FurnitureFan.com Employer ID No.: Invest Date: 10/01/2002 Mat. Date: 04/01/2003 NAICS Code: 514191 | D S LMI Investment: Invest Amt: 200,000 Address: 142 North Road Sudbury, MA 01776- | D NP EC Interest: 12% | 200,000 | 0 | | 200,000 | -100,000 | 100,000 |
| FurnitureFan.com Employer ID No.: Invest Date: 05/21/2003 Mat. Date: 11/21/2003 NAICS Code: 514191 | D S LMI Investment: Invest Amt: 30,000 Address: 142 North Rd Sudbury, MA 01776- | D NP EC Interest: 12% | 30,000 | 0 | | 30,000 | -15,000 | 15,000 |

SBA Form 468.2 (6/98) Previous editions obsolete

Page 12P

SCHEDULE 1

SCHEDULE OF LOANS AND INVESTMENTS
AS OF 03/31/2005

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

Name of Licensee:  Zero Stage Capital VI, L.P.

License No.: 01/71-0372

| 1 | 2 | | | 3 | | | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below | | | Security Type- See Note (2) Below | | | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by General Partners |
| | (a) | (b) | (c) | (a) | (b) | (c) | | | | | | |
| FurnitureFan.com Employer ID No.: Invest Date: 05/07/2003 Mat. Date: 11/07/2003 NAICS Code: 514191 | D | S | LMI Investment: Invest Amt: 35,000 Address: 142 North Rd Sudbury, MA 01776- | D | NP | EC Interest: 12% | 35,000 | 0 | | 35,000 | -17,500 | 17,500 |
| FurnitureFan.com Employer ID No.: Invest Date: 05/14/2003 Mat. Date: 11/14/2003 NAICS Code: 514191 | D | S | LMI Investment: Invest Amt: 35,000 Address: 142 North Rd Sudbury, MA 01776- | D | NP | EC Interest: 12% | 35,000 | 0 | | 35,000 | -17,500 | 17,500 |
| FurnitureFan.com Employer ID No.: Invest Date: 06/10/2003 Mat. Date: 12/10/2003 NAICS Code: 514191 | D | S | LMI Investment: Invest Amt: 215,000 Address: 142 North Rd Sudbury, MA 01776- | D | NP | EC Interest: 12% | 215,000 | 0 | | 215,000 | -107,500 | 107,500 |
| FurnitureFan.com Employer ID No.: Invest Date: 06/02/2003 Mat. Date: 12/02/2003 NAICS Code: 514191 | D | S | LMI Investment: Invest Amt: 35,000 Address: 142 North Rd Sudbury, MA 01776- | D | NP | EC Interest: 12% | 35,000 | 0 | | 35,000 | -17,500 | 17,500 |

| SCHEDULE 1 | | | SCHEDULE OF LOANS AND INVESTMENTS AS OF 03/31/2005 | | | | OMB Approval No. 3245-0063 Expiration Date 7/31/2004 | |
|---|---|---|---|---|---|---|---|---|

Name of Licensee: Zero Stage Capital VI, L.P.

License No.: 01/71-0372

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below (a) (b) (c) | Security Type- See Note (2) Below (a) (b) (c) | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by General Partners |
| FurnitureFan.com<br>Employer ID No.:<br>Invest Date: 05/28/2003<br>Mat. Date: 11/21/2003<br>NAICS Code: 514191 | D     S<br>LMI Investment:<br>Invest Amt: 30,000<br>Address: 142 North Rd Sudbury, MA 01776- | D NP EC<br>Interest: 12% | 30,000 | 0 | | 30,000 | -15,000 | 15,000 |
| FurnitureFan.com, Inc<br>Employer ID No.:<br>Invest Date: 09/03/2002<br>Mat. Date: 03/03/2003<br>NAICS Code: 514191 | D     S<br>LMI Investment:<br>Invest Amt: 150,000<br>Address: 142 North Road Sudbury, MA 01776- | D NP EC<br>Interest: 12% | 150,000 | 0 | | 150,000 | -75,000 | 75,000 |
| FurnitureFan.com, Inc<br>Employer ID No.:<br>Invest Date: 01/03/2003<br>Mat. Date: 07/03/2003<br>NAICS Code: 514191 | D     S<br>LMI Investment:<br>Invest Amt: 150,000<br>Address: 142 North Road Sudbury, MA 01776- | D NP EC<br>Interest: 12% | 150,000 | 0 | | 150,000 | -75,000 | 75,000 |
| FurnitureFan.com, Inc.<br>Employer ID No.:<br>Invest Date: 09/15/2003<br>Mat. Date: 03/15/2004<br>NAICS Code: 514191 | D     S<br>LMI Investment:<br>Invest Amt: 85,000<br>Address: 142 North Red Sudbury, MA 01776- | D NP EC<br>Interest: 12% | 85,000 | 0 | | 85,000 | -42,500 | 42,500 |

Page 12P

SCHEDULE 1

SCHEDULE OF LOANS AND INVESTMENTS
AS OF 03/31/2005

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

Name of Licensee:  Zero Stage Capital VI, L.P.

License No.: 01/71-0372

| 1 | 2 | | | 3 | | | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below | | | Security Type - See Note (2) Below | | | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by General Partners |
| | (a) | (b) | (c) | (a) | (b) | (c) | | | | | | |
| FurnitureFan.com, Inc.<br>Employer ID No.:<br>Invest Date: 07/01/2002<br>Mat. Date: 01/01/2003<br>NAICS Code: 514191<br>LMI Investment:<br>Invest Amt: 200,000<br>Address: 142 North Road Sudbury, MA 01776- | D | S | | D | NP | EC | 200,000 | 0 | | 200,000 | -100,000 | 100,000 |
| FurnitureFan.com, Inc.<br>Employer ID No.:<br>Invest Date: 03/03/2003<br>Mat. Date: 09/03/2003<br>NAICS Code: 514191<br>LMI Investment:<br>Invest Amt: 150,000<br>Address: 142 North Rd Sudbury, MA 01776-<br>Interest: 12% | D | S | | D | NP | EC | 150,000 | 0 | | 150,000 | -75,000 | 75,000 |
| FurnitureFan.com, Inc.<br>Employer ID No.:<br>Invest Date: 08/01/2002<br>Mat. Date: 02/01/2003<br>NAICS Code: 514191<br>LMI Investment:<br>Invest Amt: 170,000<br>Address: 142 North Road Sudbury, MA 01776-<br>Interest: 12% | D | S | | D | NP | EC | 170,000 | 0 | | 170,000 | -85,000 | 85,000 |
| FurnitureFan.com, Inc.<br>Employer ID No.:<br>Invest Date: 12/03/2002<br>Mat. Date: 06/03/2003<br>NAICS Code: 514191<br>LMI Investment:<br>Invest Amt: 150,000<br>Address: 141 North Rd Sudbury, MA 01776-<br>Interest: 12% | D | S | | D | NP | EC | 150,000 | 0 | | 150,000 | -75,000 | 75,000 |

**SCHEDULE 1**

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

**SCHEDULE OF LOANS AND INVESTMENTS AS OF 03/31/2005**

Name of Licensee: Zero Stage Capital VI, L.P.

License No.: 01/71-0372

| 1 Description of Investment | 2 See Note (1) Below (a)(b)(c) | 3 Security Type- See Note (2) Below (a)(b)(c) | 4 Cost at Beginning of Period | 5 Additions/ (Deductions) | 6 Description of Addition/Deduction | 7 Cost at End of Period | 8 Unrealized Appreciation (Depreciation) | 9 Fair Value as Determined by General Partners |
|---|---|---|---|---|---|---|---|---|
| FurnitureFan.com, Inc. | D S | D NP EC | 55,000 | 0 | | 55,000 | -27,500 | 27,500 |
| Employer ID No.: | LMI Investment: | | | | | | | |
| Invest Date: 10/09/2003 | Invest Amt: 55,000 | Interest: 12% | | | | | | |
| Mat. Date: 04/09/2004 | | | | | | | | |
| NAICS Code: 514191 | Address: 142 North Road Sudbury, MA 01776- | | | | | | | |
| FurnitureFan.com, Inc. | D S | D NP EC | 500,000 | 0 | | 500,000 | -250,000 | 250,000 |
| Employer ID No.: | LMI Investment: | | | | | | | |
| Invest Date: 01/30/2002 | Invest Amt: 500,000 | Interest: 12% | | | | | | |
| Mat. Date: 07/30/2002 | | | | | | | | |
| NAICS Code: 514191 | Address: 142 North Road Sudbury, MA 01776- | | | | | | | |
| FurnitureFan.com, Inc. | S E | EC | 6,224,943 | 0 | | 6,224,943 | -6,224,943 | 0 |
| Employer ID No.: | LMI Investment: | | | | | | | |
| Invest Date: 12/09/1999 | Invest Amt: 500,000 | | | | | | | |
| No. Shares: 17,722,097 | % Total Equity: 49.31 | | | | | | | |
| NAICS Code: 514191 | Address: 142 North Rd Sudbury, MA 01776- | | | | | | | |

Type of Shares: Series A Preferred, 500,000 shares @ $1.00/sh.
10 for 1 stock split
Series B Preferred, 3,333,333 shares
Series B Preferred stock, 2,222,222 shares @ $0.45/sh
Series B Preferred, 6,055,432 shares @ $0.45/sh
Series B Preferred, 888,888 sh @ $0.45/sh
Series B Preferred, 222,222 sh @ $0.45/sh

Equity Features: Warrant to purchase 750,000 shares of common stock @ $0.05/sh, Exp. 2/26/06
Warrant to purchase shares of common stock @ $0.05 with # of shares TBD based on formula related to MBDC loan, Exp 10/03/06

SBA Form 468.2 (6/98) Previous editions obsolete

Page 12P

SCHEDULE 1

SCHEDULE OF LOANS AND INVESTMENTS
AS OF 03/31/2005

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

License No.: 01/71-0372

Name of Licensee: Zero Stage Capital VI, L.P.

| 1 Description of Investment | 2 See Note (1) Below (a)(b)(c) | 3 Security Type- See Note (2) Below (a)(b)(c) | 4 Cost at Beginning of Period | 5 Additions/ (Deductions) | 6 Description of Addition/Deduction | 7 Cost at End of Period | 8 Unrealized Appreciation (Depreciation) | 9 Fair Value as Determined by General Partners |
|---|---|---|---|---|---|---|---|---|
| FurnitureFan.com, Inc. <br> Employer ID No.: <br> Invest Date: 01/31/2003 <br> Mat. Date: 07/31/2003 <br> NAICS Code: 514191 | D    S <br> LMI Investment: <br> Invest Amt: 150,000 <br> Address: 142 North Rd Sudbury, MA 01776- | D  NP  EC <br> Interest: 12% | 150,000 | 0 | | 150,000 | -75,000 | 75,000 |
| FurnitureFan.com, Inc. <br> Employer ID No.: <br> Invest Date: 08/13/2003 <br> Mat. Date: 02/13/2004 <br> NAICS Code: 514191 | D    S <br> LMI Investment: <br> Invest Amt: 80,000 <br> Address: 142 North Rd Sudbury, MA 01776- | D  NP  EC <br> Interest: 12% | 80,000 | 0 | | 80,000 | -40,000 | 40,000 |
| FurnitureFan.com, Inc. <br> Employer ID No.: <br> Invest Date: 06/03/2002 <br> Mat. Date: 12/03/2002 <br> NAICS Code: 514191 | D    S <br> LMI Investment: <br> Invest Amt: 200,000 <br> Address: 142 North Rd Sudbury, MA 01776- | D  NP  EC <br> Interest: 12% | 200,000 | 0 | | 200,000 | -100,000 | 100,000 |
| FurnitureFan.com, Inc. <br> Employer ID No.: <br> Invest Date: 12/05/2003 <br> Mat. Date: 06/05/2005 <br> NAICS Code: 414191 | D    S <br> LMI Investment: <br> Invest Amt: 25,000 <br> Address: 172 North Roads Sudbury, MA 01776- | D  NP  EC <br> Interest: 12% | 25,000 | 0 | | 25,000 | -12,500 | 12,500 |

| SCHEDULE 1 | | SCHEDULE OF LOANS AND INVESTMENTS AS OF 03/31/2005 | | | | | OMB Approval No. 3245-0063 Expiration Date 7/31/2004 | |

Name of Licensee: Zero Stage Capital VI, L.P.

License No.: 01/71-0372

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below | Security Type- See Note (2) Below | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by General Partners |
| | (a)  (b)  (c) | (a)  (b)  (c) | | | | | | |
| FurnitureFan.Com. Inc. Employer ID No.:. Invest Date: 09/30/2004    Invest Amt: 45,216 Mat. Date: 10/01/2004 NAICS Code: 514191    Address: 142 North Rd Sudbury, MA 01776- Repayment Terms: Bridge Loan for Equity Financing | S    LMI Investment: | L   NP   EC    Interest: 12% | 82,836 | 0 | | 82,836 | -41,419 | 41,417 |
| FurnitureFan.com. Inc. Employer ID No.: Invest Date: 09/30/2003    Invest Amt: 60,000 Mat. Date: 03/30/2004 NAICS Code: 514191    Address: 142 North Road Sudbury, MA 01776- | D    LMI Investment: | D   NP   EC    Interest: 12% | 60,000 | 0 | | 60,000 | -30,000 | 30,000 |
| HEALTHvision (Formally U.S. Carelink) Employer ID No.: 04-3418183    LMI Investment: Invest Date: 02/01/1999    Invest Amt: 875,000 NAICS Code: 511210    Address: 300 Fifth Avenue, 5th Floor Waltham, MA 02154- Type of Shares:    Common Stock, 703,452 shares Equity Features:    Warrants to purchase 167,709 shares of common stock at $3.75/sh, exp. 10/19/09 | S | E   NPR   EC | 1,823,244 | 0 | | 1,823,244 | 0 | 1,823,244 |

SBA Form 468.2 (6/98) Previous editions obsolete

Page 12P

| SCHEDULE 1 | | SCHEDULE OF LOANS AND INVESTMENTS AS OF 03/31/2005 | | | | OMB Approval No. 3245-0063 Expiration Date 7/31/2004 | | |
|---|---|---|---|---|---|---|---|---|

Name of Licensee: Zero Stage Capital VI, L.P.

License No.: 01/71-0372

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below (a) (b) (c) | Security Type- See Note (2) Below (a) (b) (c) | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by General Partners |
| Intersense, Inc. | S | E NPR EC | 4,138,953 | 0 | | 4,138,953 | -2,531,972 | 1,606,981 |

Employer ID No.: 04-3319654    LMI Investment:

Invest Date: 11/16/1998    Invest Amt: 1,000,000

No. Shares: 2,678,301    % Total Equity: 18.05

NAICS Code: 335999    Address: 73 Second Ave. Burlington, MA 01803-

Type of Shares: Class A Preferred Stock, 667,667 shares at $1.50/share    Series B-1 Preferred Stock, 1,111,111 shares @ $1.80/sh
Series C Preferred, 274,605 @ $2.78/sh
Series D-1 Preferred, 625,918 shares @ $0.60/sh

Equity Features: Warrant to purchase 222,222 shares of common stock at $1.80/sh, exp. 10/26/04    Series C Preferred @ $2.78/sh, Exp. 9/8/05
Warrant to purchase 18,971 shares Series C Preferred @ $2.78/sh, Exp. 9/8/05

SBA Form 468.2 (6/98) Previous editions obsolete

SCHEDULE 1

SCHEDULE OF LOANS AND INVESTMENTS
AS OF 03/31/2005

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

License No.: 01/71-0372

Name of Licensee: Zero Stage Capital VI, L.P.

| 1 | 2 | | | 3 | | | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below | | | Security Type- See Note (2) Below | | | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by General Partners |
| | (a) | (b) | (c) | (a) | (b) | (c) | | | | | | |
| **Jenzabar.com, Inc.** | | S | E | NP | EC | | 2,113,776 | 0 | | 2,113,776 | -2,113,776 | 0 |

Employer ID No.:
Invst Date: 01/20/2000    LMI Investment:
Invest Amt: 100,000
No. Shares: 581,858    % Total Equity: 2.6
NAICS Code: 514191    Address: 17 Sellars Street Cambridge, MA 02139-

Type of Shares:
Series A Preferred, 31,646 shares
Series B Preferred, 409,836 shares
Quarterly dividend of 14,856 shares Series B Preferred
Quarterly dividend of Series B Preferred, 15,926 shares
Quarterly dividend of Series B Preferred, 16,523 shares
Quarterly dividend of Series B Preferred, 17,142 shares
Quarterly dividend Series B Preferred, 17,785 shares
Quarterly dividend of Series B Preferred, 18,452 shares
Quarterly dividend of Series B Preferred, 19,144 shs
Quarterly dividend of Series B Preferred, 19,862
Quarterly dividend of Series B Preferred, 686 shs

Equity Features: Series B Preferred Stock
Warrant to purchase 81,027 shares of common stock at an aggregate of $226,875.60

| | 2 | | | 3 | | | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Live Wave** | | S | E | NPR | EC | | 5,211,738 | 0 | | 5,211,738 | 0 | 5,211,738 |

Employer ID No.: Pending    LMI Investment:
Invst Date: 06/25/1999
Invest Amt: 500,000
No. Shares: 4,204,513    % Total Equity: 51.38
NAICS Code: 513220    Address: 359 Thames Street Newport, RI 02840-
Repayment Terms:
Type of Shares: Series A Preferred 715,000 shares

Series A Preferred Stock, 715,000 shares   Series A Preferred, 643,500 shares
Series B Preferred Stock, 667,535 shares @ $2.74/sh   Series C Preferred, 307,471 shares @ $1.74/sh
Series D Preferred, 1,871,007 shs @ $1.01426274

SCHEDULE 1

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

SCHEDULE OF LOANS AND INVESTMENTS
AS OF 03/31/2005

Name of Licensee: Zero Stage Capital VI, L.P.

License No.: 01/71-0372

| 1 | 2 | | | 3 | | | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description of Investment | See Note (1) Below | | | Security Type-See Note (2) Below | | | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by General Partners |
| | (a) | (b) | (c) | (a) | (b) | (c) | | | | | | |
| **NetKey (formally Lexitech)** | P | S | EC | E | NP | EC | 3,499,999 | 0 | | 3,499,999 | -562,778 | 2,937,221 |
| Employer ID No.: | | | | | | | | | | | | |
| Invest Date: 01/27/2000    LMI Investment: | | | | | | | | | | | | |
| Invest Amt: 3,000,000 | | | | | | | | | | | | |
| No. Shares: 5,874,443    % Total Equity: 11.02 | | | | | | | | | | | | |
| NAICS Code: 511210    Address: 32 Park Drive East Branford, CT 06405- | | | | | | | | | | | | |
| Type of Shares: Series A Preferred Stock, 981,000 shares   Series B Preferred, 226,244 shares @ $2.21/sh | | | | | | | | | | | | |
| Equity Features: Warrant to purchase preferred stock based on formula | | | | | | | | | | | | |
| **Spherics, Inc.** | S | E | PR | EC | | | 3,250,000 | 0 | | 3,250,000 | -845,000 | 2,405,000 |
| Employer ID No.: | | | | | | | | | | | | |
| Invest Date: 01/20/2000    LMI Investment: | | | | | | | | | | | | |
| Invest Amt: 3,250,000 | | | | | | | | | | | | |
| No. Shares: 3,250,000    % Total Equity: 20.61 | | | | | | | | | | | | |
| NAICS Code: 541710    Address: 300 Metro Center Blvd. Suite 150 Warwick, RI 02886- | | | | | | | | | | | | |
| Type of Shares: Series A Preferred Stock, 3,250,000 shares @ $1/sh | | | | | | | | | | | | |
| **ViaCell, Inc.** | S | E | NP | EC | | | 2,000,000 | 0 | | 2,000,000 | 3,026,669 | 5,026,669 |
| Employer ID No.: | | | | | | | | | | | | |
| Invest Date: 05/01/2000    LMI Investment: | | | | | | | | | | | | |
| Invest Amt: 2,000,000 | | | | | | | | | | | | |
| No. Shares: 666,667    % Total Equity: 2.89 | | | | | | | | | | | | |
| NAICS Code: 541710    Address: One Innovation Drive Worcester, MA 01605- | | | | | | | | | | | | |
| Type of Shares: Series G Preferred, 666,667 shares   IPO on 1/21/05 - Preferred conv to common   Common Shares, 666,667 | | | | | | | | | | | | |

| SCHEDULE 1 | | | | SCHEDULE OF LOANS AND INVESTMENTS AS OF 03/31/2005 | | | | OMB Approval No. 3245-0063 Expiration Date 7/31/2004 |

Name of Licensee: Zero Stage Capital VI, L.P.

License No.: 01/71-0372

| | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| 1 | See Note (1) Below | Security Type-See Note (2) Below | Cost at Beginning of Period | Additions/ (Deductions) | Description of Addition/Deduction | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by General Partners |
| Description of Investment | (a) (b) (c) | (a) (b) (c) | | | | | | |

Worldwinner.com

Employer ID No.:     LMI Investment:

Invest Date: 12/02/1999    Invest Amt: 2,000,000

No. Shares: 5,380,308    % Total Equity: 23.56

NAICS Code: 713990    Address: 350 Mass Ave Cambridge, MA 02139-

Type of Shares:    Series A Preferred, 2,000,000 shares @ $1.00/sh
Series A Preferred, 3,380,308 shares @ $1.00/sh
Sold Series A Preferred, 238,095 shs

| | S | S  E  NP  EC | 5,142,213 | 0 | | 5,142,213 | 3,843,565 | 8,985,778 |

(1) (a): Put a "D" in this column if the Financing has become delinquent as to interest and/or principal.
    (b): Put a "P" in this column if the Financing is a participation or a joint financing with an Associate as defined in the instructions for Schedule5.
    (c): Put an "S" in this column if this is a Financing of a "Smaller Enterprise" in accordance with section 107.710(q).
(2) (a): Indicate the category of Loans and Investments in which the financing is included on page 2P:  L=Loans; D=Debt;  E=Equity; R=Receivables from
         sale of assets acquired; AA=Assets acquired; OC=Operating concerns acquired; NS=Notes and other securities received
    (b): P=Publicly Traded and Marketable (as defined in section 107.50); PR=Public-Restricted; PE=Public-Encumbered; NP=Nonpublic
    (c): EC=Equity Capital Investment (as defined in section 107.50), V=Venture Capital Financing (as defined in section 107.1160(f))

SBA Form 468.2 (6/98) Previous editions obsolete

Page 12P

SCHEDULE 1 A/B/C

1 A.   SUMMARY OF LOANS AND INVESTMENTS
1 B.   SUMMARY OF EQUITY CAPITAL INVESTMENTS
1 C.   SMALLER ENTERPRISE FINANCINGS

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

Name of Licensee:  Zero Stage Capital VI, L.P.

License No.: 01/71-0372

## 1 A. SUMMARY OF LOANS AND INVESTMENTS

| 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|
| Investment Category | Cost at Beginning of Period | Additions/ (Deductions) | Cost at End of Period | Unrealized Appreciation (Depreciation) | Fair Value as Determined by General Partner |
| TOTAL LOANS (line1, page 2P) | 82,836 | 500,000 | 582,836 | -291,419 | 291,417 |
| TOTAL DEBT SECURITIES (line 2, page 2P) | 2,870,000 | 0 | 2,870,000 | -1,435,000 | 1,435,000 |
| TOTAL EQUITY SECURITIES (line 3, page 2P) | 59,724,237 | -4,652,657 | 55,071,580 | -18,805,569 | 36,266,011 |
| TOTAL PORTFOLIO SECURITIES (line 4, page 2P) | 62,677,073 | -4,152,657 | 58,524,416 | -20,531,988 | 37,992,428 |
| TOTAL ASSETS ACQUIRED (line 7, page 2P) | 0 | 0 | 0 | 0 | 0 |
| TOTAL OPERATING CONCERNS ACQUIRED (line 8, page 2P) | 0 | 0 | 0 | 0 | 0 |
| TOTAL NOTES AND OTHER SECS. RECEIVED (line 9, page 2P) | 0 | 0 | 0 | 0 | 0 |
| TOTAL LOANS AND INVESTMENTS (line 10, page 2P) | 62,677,073 | -4,152,657 | 58,524,416 | -20,531,988 | 37,992,428 |

## 1 B. SUMMARY OF EQUITY CAPITAL INVESTMENTS

| | 0 | 0 | 0 | 0 | 0 |
|---|---|---|---|---|---|

## 1 C. SMALLER ENTERPRISE  FINANCINGS

1   Cumulative dollar amount of Smaller Enterprise Financings extended between April 25, 1994 and close of reporting fiscal year.   158,179,708

2   Cumulative dollar amount of all Financings extended between April 25, 1994 and close of reporting fiscal year.   158,179,708

3   Percentage of total Financings extended to Smaller Enterprises (line 1 divided by line 2)   100.0%

SEE 13 CFR 107.710 FOR PERCENTAGE OF TOTAL FINANCINGS WHICH MUST BE IN SMALLER ENTERPRISES.

SCHEDULE 2

SCHEDULE OF REALIZED GAINS AND
LOSSES ON LOANS AND INVESTMENTS
FOR 3 MONTHS ENDED 03/31/2005

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

License No.  01/71-0372

Name of Licensee: Zero Stage Capital VI, L.P.

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Net Realized Gain (Loss) | | |
| Name of Small Business | Security Type (1) | Transaction Type (2) | Net Sales Price | Cost | Total | Cash | Non-cash (gains only) | Name and Address of Purchaser (applies to sales and exchanges) |
| Digital Angel Corp. | E | S | 1,315,170 | 4,652,658 | -3,337,488 | 0 | 0 | Public sale of security |
| TOTAL | | | $1,315,170 | $4,652,658 | ($3,337,488) | $0 | $0 | |

(1) Security Type:  L = Loans, D = Debt, E = Equity, AA = Assets Acquired, OC = Operating concerns acquired, NS = Notes and Other Securities Received
(2) Transaction Type:  S = Sale, E = Exchange, C = Charge-off

SBA Form 468.2 (6/98) Previous editions obsolete

Page 14P

SCHEDULE 3

SCHEDULE OF NON-CASH GAINS/INCOME
AS OF 03/31/2005

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

Name of Licensee:  Zero Stage Capital VI, L.P.

License No.  01/71-0372

| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|
| Name of Small Business | Description of Non-cash Gains/Income (1) | Balance at Beginning of Period | Additions During Period | Collections During Period | Balance at End of Period | Amount of "Includible Non-cash Gain" for Capital Impairment Purposes |
| No Information | | | | | | |
| TOTAL | | | | | | |

(1)  Examples of non-cash gains and income include the following:
  - Non-cash gains on sale or exchange of securities
  - Interest income accrued on deferred interest notes, zero coupon bonds or similiar instruments
  - Dividends received in kind
  - Accrued interest converted into a new note or added to principal of an existing note.  The amount of any such interest which was
    previously included in Undistributed Net Realized Earnings must be reclassified to Non-cash Gains/Income.

SBA Form 468.2 (6/98) Previous editions obsolete

Page 15P

SCHEDULE 4

SCHEDULE OF DELINQUENT LOANS AND INVESTMENTS
AS OF 03/31/2005

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

Name of Licensee: Zero Stage Capital VI, L.P.

License No. 01/71-0372

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Delinquent Principal: | | Delinquent Interest: | | Date of Last Payment | | Amount of Last Payment | | |
| Name of Small Business | Outstanding Principal Balance | Amount Past Due | Days Past Due | Amount Past Due | Days Past Due | Principal | Interest | Principal | Interest | Fair Market Value of Collateral |
| FurnitureFan.com. Inc. | 35,000 | 35,000 | 332 | 6,786 | 240 | | | 0 | 0 | 0 |
| FurnitureFan.com | 215,000 | 215,000 | 479 | 60,895 | 387 | | | 0 | 0 | 0 |
| FurnitureFan.com | 200,000 | 200,000 | 732 | 90,458 | 640 | | | 0 | 0 | 0 |
| FurnitureFan.com | 35,000 | 35,000 | 487 | 10,505 | 395 | | | 0 | 0 | 0 |
| FurnitureFan.com | 30,000 | 30,000 | 491 | 8,700 | 399 | | | 0 | 0 | 0 |
| FurnitureFan.com | 35,000 | 35,000 | 512 | 10,660 | 420 | | | 0 | 0 | 0 |
| FurnitureFan.com | 30,000 | 30,000 | 498 | 8,858 | 406 | | | 0 | 0 | 0 |
| FurnitureFan.com | 130,000 | 130,000 | 549 | 42,640 | 457 | | | 0 | 0 | 0 |
| FurnitureFan.com | 35,000 | 35,000 | 505 | 10,090 | 413 | | | 0 | 0 | 0 |
| FurnitureFan.com, Inc | 150,000 | 150,000 | 639 | 57,994 | 547 | | | 0 | 0 | 0 |
| FurnitureFan.com, Inc | 150,000 | 150,000 | 761 | 70,898 | 669 | | | 0 | 0 | 0 |
| FurnitureFan.com, Inc. | 150,000 | 150,000 | 577 | 52,055 | 485 | | | 0 | 0 | 0 |

Page 16P

SCHEDULE 4

SCHEDULE OF DELINQUENT LOANS AND INVESTMENTS
AS OF 03/31/2005

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

License No. 01/71-0372

Name of Licensee:  Zero Stage Capital VI, L.P.

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Delinquent Principal: | | Delinquent Interest: | | Date of Last Payment: | | Amount of Last Payment | | |
| Name of Small Business | Outstanding Principal Balance | Amount Past Due | Days Past Due | Amount Past Due | Days Past Due | Principal | Interest | Principal | Interest | Fair Market Value of Collateral |
| FurnitureFan.com, Inc. | 200,000 | 200,000 | 822 | 103,726 | 730 | | | 0 | 0 | 0 |
| FurnitureFan.com, Inc. | 150,000 | 150,000 | 611 | 55,847 | 519 | | | 0 | 0 | 0 |
| FurnitureFan.com, Inc. | 170,000 | 170,000 | 791 | 83,181 | 699 | | | 0 | 0 | 0 |
| FurnitureFan.com, Inc. | 200,000 | 200,000 | 850 | 108,102 | 758 | | | 0 | 0 | 0 |
| FurnitureFan.com, Inc. | 500,000 | 500,000 | 977 | 317,985 | 885 | | | 0 | 0 | 0 |
| FurnitureFan.com, Inc. | 55,000 | 55,000 | 352 | 11,348 | 260 | | | 0 | 0 | 0 |
| FurnitureFan.com, Inc. | 80,000 | 80,000 | 414 | 19,101 | 322 | | | 0 | 0 | 0 |
| FurnitureFan.com, Inc. | 85,000 | 85,000 | 383 | 19,038 | 291 | | | 0 | 0 | 0 |
| FurnitureFan.com, Inc. | 150,000 | 150,000 | 669 | 61,158 | 577 | | | 0 | 0 | 0 |
| FurnitureFan.com. Inc. | 60,000 | 60,000 | 367 | 12,920 | 275 | | | 0 | 0 | 0 |
| TOTAL | $2,845,000 | $2,845,000 | | $1,222,945 | | | | $0 | $0 | $0 |

SCHEDULE 5

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

SCHEDULE OF PARTICIPATIONS AND JOINT FINANCINGS
AS OF 03/31/2005

Name of Licensee: Zero Stage Capital VI, L.P.

License No.  01/71-0372

## PART II. PARTICIPATION AND JOINT FINANCINGS INITIATED BY OTHER INVESTORS

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|
| Name of Small Business | L / D / E (1) | P / J (2) | Total Amount of Financing- original cost | Financing provided by Licensee- original cost | Financing provided by Licensee- current balance | Names of Co-investors (identify initiating investor) | Does Licensee have recourse to any co-investor? (3) |
| Axxis Inc.  (Formally Fuelspot.com) | E | J | 1,500,000 | 125,000 | 7,624,999 | Zero Stage Capital SBIC VII, L.P. | N |
| NetKey (formally Lexitech) | E | J | 9,500,000 | 3,000,000 | 3,499,999 | Hudson Venture Partners II, LP<br>Fleet Development Ventures, LLC<br>Connecticut Innovations, Inc.<br>Zero Stage Capital VII, LP<br>Zero Stage Capital (Cayman) VII, | N |

(1) Indicate "L" for Loan, "D" for Debt, "E" for Equity.
(2) Indicate "P" for Participation, "J" for Joint Financing (see "Instructions for Preparation of SBA Form 468" for definitions).
(3) If yes, provide details on a separate sheet of paper.

| SCHEDULE 6 | SCHEDULE OF CASH AND INVESTED IDLE FUNDS<br>AS OF 03/31/2005 | OMB Approval No. 3245-0063<br>Expiration Date 7/31/2004 |
|---|---|---|

| Name of Licensee:  Zero Stage Capital VI, L.P. | License No.   01/71-0372 |
|---|---|

| **COMPLETE SCHEDULE ONLY IF LICENSEE HAS, OR PLANS TO APPLY FOR, SBA LEVERAGE** | |
|---|---|

**II. REPURCHASE AGREEMENTS WITH FEDERALLY-INSURED INSTITUTIONS**

| Name and Location of Financial Institution | Maturity Date | Amount |
|---|---|---|
| New Haven Savings Bank<br>195 Church Street, New Haven, CT | | 0 |

**IV. DEMAND DEPOSIT, MONEY MARKET, AND SAVINGS ACCOUNTS IN FEDERALLY - INSURED INSTITUTIONS**

| Name and Location of Financial Institution | Description | Amount |
|---|---|---|
| Pacific Growth Equities<br>4 Maritime Plaza, San Francisco, CA | Brokerage account - cash funds | 200 |
| Boston Private Bank<br>10 Post Office Square, Boston, MA | Money Mkt Investment Account | 35,803 |
| Silicon Valley Bank<br>Santa Clara, CA 95055-2607 | Money Market Account | 3,004 |
| Silicon Valley & Trust<br>Santa Clara, CA 95055-2607 | Checking | 110,124 |
| Boston Safe Deposit & Trust<br>One Boston Place, Boston, MA | Checking Account | 57,765 |
| Boston Safe Deposit & Trust -<br>One Boston Place Boston, MA | Money Market Account | 1,036,801 |

| **TOTAL CASH, CASH EQUIVALENTS AND IDLE FUNDS**<br>**(total must agree with sum of lines 14 and 15, page 2P)** | $1,243,697 |
|---|---|

| SCHEDULE 7 | SCHEDULE OF ACTIVITY<br>AS OF 03/31/2005<br>(Amount rounded to nearest dollar) | OMB Approval No. 3245-0063<br>Expiration Date 7/31/2004 |
|---|---|---|
| Name of Licensee:  Zero Stage Capital VI, L.P. | | License No.:  01/71-0372 |

### PART I.   FIRST ACTIVITY TEST

1. Cash & cash equivalents (page 2P, line 14)                                    | 1,920,884 |

2. Invested idle funds (page 2P, line 15)                                        | 0 |

3. Total cash and idle funds                                                     | 1,920,884 |

4. Total Assets at Cost:

    a.  Total Assets (page 2P, line 29)                      | 42,060,029 |

    b.  ADD:  Unrealized Depreciation (page 2P, line 10, col. 2)    | 27,454,981 |

    c.  LESS:  Unrealized Appreciation (page 2P, line 10, col. 3)   | 6,922,993 |

    d.  Total Assets at cost                                 | 62,592,017 |

5. Line 3 Divided by Line 4d (expressed as a percentage)                         | 3.1% |

IF LINE 5 IS LESS THAN OR EQUAL TO 20 PERCENT, LICENSEE IS NOT INACTIVE--
    DO NOT COMPLETE PART II
IF LINE 5 IS GREATER THAN 20%, COMPLETE THE SECOND ACTIVITY TEST IN PART II

### PART II   SECOND ACTIVITY TEST

6. Financings during past 18 months:

    a.  Loans                                                  | |

    b.  Debt                                                   | 0 |

    c.  Equity                                                 | 0 |

    d.  Guarantees                                            | 0 |

7. Total (lines 6a through 6d)                                                   | 0 |

8. Regulatory Capital                                                            | 50,000,000 |

9. Line 7 divided by line 8 (expressed as a percentage)                          | 0.0% |

IF LINE 9 IS LESS THAN 20%, LICENSEE MAY BE INACTIVE UNDER SECTION 107.590-
    ATTACH EXPLANATION OF INACTIVITY AND PLANNED CORRECTIVE ACTION.

| SCHEDULE 8 | GENERAL PARTNERS, LIMITED PARTNERS,<br>AND ADVISORY MANAGEMENT<br>AS OF <u>03/31/2005</u> | | OMB Approval No. 3245-0063<br>Expiration Date 7/31/2004 | |

Name of Licensee:  Zero Stage Capital VI, L.P.　　　　　　　　　　　　License No.:  01/71-0372

| 1 | 2 | 3 | 4 | 5 | |
|---|---|---|---|---|---|
| Name and Address | General Partner/<br>Limited Partner/<br>Manager -- give<br>exact title(s) | Are partnership<br>interests legally<br>owned, beneficially<br>owned, or controlled? | Number of<br>Partnership<br>Units Owned<br>or Controlled | Percent Owned or Controlled<br>of Total Interests Outstanding | |
| | | | | Beginning<br>of Period | End of<br>Period |
| New Hampshire Retirement System<br>4 Chenell Drive<br>Concord, NA 03301-8509 | Limited Partner | Legally | 75 | 20.00 | 20.00 |
| New Haven Savings Bank<br>195 Church Street<br>New Haven, CT 06510 | Limited Partner | Legally Owned | 50 | 10.00 | 10.00 |
| Zero Stage Capital Associates VI, LLC<br>101 Main Street<br>Cambridge, MA 02142 | General Partner | Legally | 5.00 | 1.00 | 1.00 |

| OPERATING PLAN UPDATE | OMB Approval No. 3245-0063<br>Expiration Date 7/31/2004 |
|---|---|

**INSTRUCTIONS**

Any Licensee which has SBA leverage outstanding, or which expects to apply for leverage in the current fiscal year, must prepare an annual update of its plan of operations. The update must be submitted to SBA as an addendum to the Licensee's Annual Financial Report on Form 468. SBA will consider the information provided as part of its evaluation of the financial soundness of the Licensee, in accordance with the provisions of Section 406 of the Small Business Equity Enhancement Act.

The plan update must include analysis and discussion of key events of the past year, as well as expectations for the current year. SBA expects that most Licensees will be able to provide the required information in a narrative of no more than 3 pages.

**Content of Report**

1. For the fiscal year ended, the Licensee should discuss the following:
   a. Major positive and negative events which affected overall performance during the year; highlight any significant differences between last year's plan and actual performance
   b. Any significant changes in the operations of the Licensee, such as changes in organizational structure, scope of operations, level or phase of investment activity, or types of investments being made
   c. Any management changes
   d. Any lawsuits or other events giving rise to contingent liabilities

2. For the current fiscal year, the Licensee should discuss the following:
   a. Levels of new and follow-on investment anticipated
   b. Anticipated exits from investments
   c. Any material changes expected in investment strategy or portfolio composition
   d. Any material changes expected in overhead expenditures
   e. Any changes expected in management
   f. Any other anticipated events which may have a significant effect on Licensee's performance

**ECONOMIC DATA FOR PORTFOLIO CONCERNS**
(unaudited)

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

License No.  01/71-0372

Name of Licensee:  Zero Stage Capital VI, L.P.

| 1 | 2 | 3 | 4 | | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Name of Portfolio Concern and Employer ID Number | Most recent fiscal year end (Mo./Year) | Full-time equivalent employees at fiscal year end | Income taxes paid during most recent fiscal year: | | Total employee income tax withholding for fiscal year: | | Gross revenue for most recent fiscal year | After-tax profit(loss) for most recent fiscal year |
| | | | Federal | State and Local | Federal | State and Local | | |
| Amgen, Inc.<br>Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Axxis Inc.  (Formally Fuelspot.com)<br>Emp. ID:  Applied For | 12/31/2002 | 18 | 0 | 456 | 497,609 | 101,739 | 2,039,325 | -2,201,449 |
| Bluestreak.com<br>Emp. ID: | 12/31/2002 | 61 | 0 | 16,056 | 0 | 233,226 | 8,047,214 | -5,056,481 |
| Digital Angel Corportion (Merger with Oute<br>Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| First Service Network (formally ServiceQwi<br>Emp. ID: | 12/31/2002 | 123 | 0 | 0 | 1,401,818 | 325,517 | 20,500,480 | -12,283,258 |
| FurnitureFan.com. Inc.<br>Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| FurnitureFan.com<br>Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| FurnitureFan.com, Inc<br>Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

SBA Form 468.2 (6/98) Previous editions obsolete

## ECONOMIC DATA FOR PORTFOLIO CONCERNS
### (unaudited)

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

Name of Licensee:  Zero Stage Capital VI, L.P.

License No.   01/71-0372

| 1 | 2 | 3 | 4 | | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Name of Portfolio Concern and Employer ID Number | Most recent fiscal year end (Mo./Year) | Full-time equivalent employees at fiscal year end | Income taxes paid during most recent fiscal year: | | Total employee income tax withholding for fiscal year: | | Gross revenue for most recent fiscal year | After-tax profit/(loss) for most recent fiscal year |
| | | | Federal | State and Local | Federal | State and Local | | |
| FurnitureFan.com, Inc. Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| FurnitureFan.com. Inc. Emp. ID: | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| HEALTHvision (Formally U.S. Carelink) Emp. ID: 04-3418183 | 12/31/2002 | 150 | 0 | 0 | 2,592,999 | 166,259 | 21,900,000 | -4,550,000 |
| Intersense, Inc. Emp. ID: 04-3319654 | | 0 | | | | | 0 | |
| Jenazbar.com, Inc. Emp. ID: | 12/31/2002 | 254 | 0 | 35,655 | 3,711,240 | 1,396,627 | 48,258 | -7,207,000 |
| Live Wave Emp. ID:  Pending | 12/31/2002 | 10 | 0 | 0 | 190,790 | 36,238 | 1,101,804 | -2,217,534 |
| NetKey (formally Lexitech) Emp. ID: | 12/31/2002 | 44 | 0 | 2,000 | 1,386,888 | 231,636 | 5,275,592 | -3,966,910 |
| Spherics, Inc. Emp. ID: | 12/31/2002 | 19 | 0 | 0 | 330,065 | 74,372 | 135,000 | -3,575,834 |

ECONOMIC DATA FOR PORTFOLIO CONCERNS
(unaudited)

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

Name of Licensee: Zero Stage Capital VI, L.P.

License No.  01/71-0372

| 1 | 2 | 3 | 4 | | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Name of Portfolio Concern and Employer ID Number | Most recent fiscal year end (Mo./Year) | Full-time equivalent employees at fiscal year end | Income taxes paid during most recent fiscal year: | | Total employee income tax withholding for fiscal year: | | Gross revenue for most recent fiscal year | After-tax profit(loss) for most recent fiscal year |
| | | | Federal | State and Local | Federal | State and Local | | |
| ViaCell, Inc.<br>Emp. ID: | 12/31/2002 | 240 | 0 | 0 | 3,225,763 | 596,614 | 20,374,635 | -43,864,069 |
| Worldwinner.com<br>Emp. ID: | 12/31/2002 | 57 | 280,371 | 21,075 | 931,468 | 203,633 | 6,800,599 | -9,761,438 |

SBA Form 468.2 (6/98) Previous editions obsolete

| CERTIFICATIONS | OMB Approval No. 3245-0063<br>Expiration Date 7/31/2004 |
|---|---|

| Name of Licensee:  Zero Stage Capital VI, L.P. | License No.  01/71-0372 |
|---|---|

I, [_____], a General Partner of _____(Licensee),]

[_____], a General Partner of _____, the General Partner of

_____, (Licenseee), ]

[_____], a Managing Member of _____,

the General Partner of _____ (Licenseee), ]

[_____], the President of _____,

the General Partner of _____ (Licensee), ] do hereby certify as follows:

1.  The audited Annual Financial Report for the fiscal year ended    03/31/2005    submitted by

Zero Stage Capital VI, L.P._____ (Licensee) to the Small Business Administration on SBA Form 468

is true and correct in all respects.  The statements and schedules listed below have been omitted from the submission.

2.  The General Partner of   Zero Stage Capital VI, L.P._____ (Licensee) has reviewed and approved the

audited Annual Financial Report of such company for the fiscal year ended   03/31/2005    .

3.   Zero Stage Capital VI, L.P._____ (Licensee) has filed all federal, state and local tax returns through

the date hereof, including but not limited to payroll tax returns and informational returns for income tax purposes.

4.   Zero Stage Capital VI, L.P._____ (Licensee) is in good standing under the laws of the State of  Massachusetts

> **STATEMENTS AND SCHEDULES OMITTED:**
>
> 10P-Schedule of Commitments
> 15P-Schedule of Non-Cash Gains/Income
> 17P-Schedule of Participations and Joint Financing
> 18P-Cash and Idle Invested Funds
> 19P-Schedule of Activity

Date:   04/30/2005

By: _____

Name:  Paul M. Kelley
Title:   Managing Member

Title 18, Sections 1001 and 1006 of the U.S. Code subjects to punishment by fine and/or imprisonment any person who makes any oral or written statement, entry or representation to SBA, knowing it to be false, or willfully conceals a material fact, in a matter within SBA's jurisdiction or who with intent to defraud shares, directly or indirectly, any benefits derived from any act of an SBIC. Title 15, Section 645(a) subjects to punishment by fine and/or imprisonment any person making a false statement or willfully overvaluing any security, for the purpose of obtaining for himself or another any loan, extension thereof, or the acceptance, release or substitution of security therefor, or for the purpose of influencing in any way the action of SBA, or for the  purpose of obtaining money or anything of value.

# QUARTERLY CERTIFICATIONS

OMB Approval No. 3245-0063
Expiration Date 7/31/2004

Name of Licensee: Zero Stage Capital VI, L.P.                    License No.   01/71-0372

I, [_____ , a General Partner of _____ (Licensee),]

[_____ , a General Partner of _____ , the General Partner of
_____ (Licenseee), ]

[_____ , a Managing Member of _____ ,
the General Partner of _____ (Licenseee), ]

[_____ , the President of _____ ,
the General Partner of _____ (Licensee), ] do hereby certify as follows:

1. The Financial Report for the    3    months ended 03/31/2005 submitted by

Zero Stage Capital VI, L.P._____ (Licensee) to the Small Business Administration on SBA Form 468

is true and correct in all respects.  The statements and schedules listed below have been omitted from the submission.

2. The General Partner of   Zero Stage Capital VI, L.P._____ (Licensee) has reviewed and approved the

Financial Report of such company for the    3    months ended 03/31/2005 .

3.  Zero Stage Capital VI, L.P._____ (Licensee) is in good standing under the laws of the State of  Massachusetts

**STATEMENTS AND SCHEDULES OMITTED:**

10P-Schedule of Commitments
15P-Schedule of Non-Cash Gains/Income
17P-Schedule of Participations and Joint Financing
18P-Cash and Idle Invested Funds
19P-Schedule of Activity

Date:   04/30/2005                              By: _____

Name:  Paul M. Kelley
Title:  Managing Member

Title 18, Sections 1001 and 1006 of the U.S. Code subjects to punishment by fine and/or imprisonment any person who makes any oral or written statement, entry or representation to SBA, knowing it to be false, or willfully conceals a material fact, in a matter within SBA's jurisdiction or who with intent to defraud shares, directly or indirectly, any benefits derived from any act of an SBIC.  Title 15, Section 645(a) subjects to punishment by fine and/or imprisonment any person making a false statement or willfully overvaluing any security, for the purpose of obtaining for himself or another any loan, extension thereof, or the acceptance, release or substitution of security therefor, or for the purpose of influencing in any way the action of SBA, or for the purpose of obtaining money or anything of value.