AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT

for the                              DISTRICT OF                          Massachusetts

United States of America                      **SUBPOENA IN A CIVIL CASE**

V.

Zero Stage Capital VI, L.P.                   Case Number:[1]  05-10887-JLT

TO: McNamara Koening & McCarthy, PC
    65 William Street
    Wellesley, MA 02481

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A Attached

| PLACE  Duffy Sweeney & Scott, LTD., One Turks Head Place, Suite 1200 Providence, RI 02903, (401) 455-0700 | DATE AND TIME 3/23/2007 |
| --- | --- |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| [signature] | 2/12/07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Stacey P. Nakasian, Esq., Duffy Sweeney & Scott, LTD.,
One Turks Head Place, Suite 1200, Providence, RI 02903 - (401) 455-0700 - (401) 455-0701 -Fax

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

1.  As used herein, the term "document" is used in the broad sense and includes, but is not limited to, the following items, whether printed or recorded or reproduced by any other mechanical process, or written or produced by hand, and whether sent or received or neither, namely: contracts; agreements and understandings; communications, including intracompany communications; memos; statements; handwritten or other types of notes; correspondence; telegrams; memoranda; notices; records; books; summaries, notes or records of telephone conversations; summaries, notes or records of personal conversations or interviews; diaries; forecasts; statistical statements; accountants' work papers; graphs; charts; ledgers; journals; books or records of account; summaries of accounts; balance sheets; income statements; minutes or records of meetings or conferences; desk calendars; appointment books (including pocket appointment books); reports and/or summaries of interviews; reports and/or summaries of investigations; rough or scratch pad notes; records, reports or summaries of negotiations; studies; brochures; pamphlets; circulars; press releases; contracts; projections; drafts of any documents; working papers; marginal notations; doodlings; photographs; drawings; checks (front and back); invoices, bills of lading and other commercial papers; tape or video recordings; computer printouts; data processing input and output; microfilms; check stubs or receipts; and any other document or writing of whatever description.

The term "document" includes electronic data, electronically stored information and electronic mail, sound records and images and shall include both paper and electronic versions of the records regardless of their format or means of storage. As used herein, the term "electronic data" means all information of all kinds maintained by electronic data processing systems including all non-identical copies of such information. Electronic data includes, without

limitation, computer programs (whether private, commercial or work in progress), programming notes or instructions, and input and/or output used or produced by any software program or utility (including electronic mail messages and all information referencing or relating to such messages anywhere on the computer system, word processing documents and all information stored in connection with such documents, electronic spreadsheets, databases including all records and fields and structural information, charts, graphs and outlines, arrays of information and all other information used or produced by any software), operating systems, source code of all types, programming languages, linkers and compilers, peripheral drivers, PIF files, batch files, any and all ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active file, deleted file or file fragment. Electronic data includes any and all information stored on computer memories, hard disks, floppy disks, CD ROM drivers, Bernoulli Box drivers and their equivalent, magnetic tape of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and/or transmittal. The term electronic data also includes the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with the information described above.

2. As used herein, "document" means the original and any non-identical copy. Handwritten notations of any kind on the original or any copy of a document render same non-identical.

3. As used herein, the term "concerning" means referring to, describing, reflecting, relating to, containing, evidencing, or constituting.

4. Each document produced in compliance with this request should be accompanied by an indication as to the particular paragraph(s) under which it is being produced.

5.   If you claim privilege for any document requested herein, provide the following information as to each such document:

   (a) the title, heading or caption of such document, if any;

   (b) the identifying number(s), letter(s), or combination thereof, if any, and the significance or meaning of such number(s), letter(s), or combination thereof;

   (c) the date appearing on such document and if no date appears thereon, the approximate date on which such document was prepared;

   (d)   the general nature or description of such document (i.e., whether it is a letter, memorandum, minutes of meeting, etc.), and the number of pages of which it consists;

   (e) the name of the person who signed such document or, if it was not signed, the name of the person or persons who prepared it;

   (f) the name(s) of the person(s) to whom such document was addressed and the name of each person, other than the addressee(s), to whom such document, or a copy thereof, was sent or who received or was shown any portion of the document;

   (g) the identity of the person who has custody of such document; and

   (h) a general summary of the substance of the document sufficient to evaluate the privilege asserted.

6.   The time period covered by these Document Requests shall be from January 2002 to the present, unless otherwise stated.

7.   "ZSC", refers to Zero Stage Capital, Inc., its officers, directors, employees, partners, representatives, agents' subsidiaries and affiliated companies.

8.   "Fund VI" refers to Zero Stage Capital VI, L.P., its general and limited partners, officers, employees, representatives and agents.

3

## REQUESTS

1. To the extent not already provided, all documents requested in Maurice J. Whalen's letter of February 15, 2006, a copy of which is attached as Exhibit A.

2. All documents concerning the allocation to Fund VI or any other entity of expenses incurred by ZSC.

3. All documents concerning the work performed by T. Tedeschi on behalf of ZSC which is described in his memo dated April 22, 2005, a copy of which is attached as Exhibit B..

4. All documents concerning correspondence with the Small Business Administration, either in its regulatory capacity or in its capacity as Receiver for Fund VI, including all notes of conversations or meetings with employees or representatives of the Small Business Administration.

5. All documents concerning any interview or other analysis concerning the reasonableness of expense allocations to Fund VI.

6. All documents provided to your firm by ZSC or accountants working with ZSC relating to the allocation of expenses to Fund VI.

7. All documents concerning communications between your firm and ZSC or its attorneys regarding the allocation of expenses to Fund VI.

8. All engagement letters or agreements between your firm and ZSC or any fund managed by ZSC.

9. All documents describing or addressing the nature or scope of services provided or to be provided by your firm to ZSC or any fund managed by ZSC.

# EXHIBIT A



February 15, 2006

Donald K. Stern, BBO #479420
Julia Frost-Davies BBO #630590
Jason L. Watkins BBO # 658560
Bingham McCutchen LLP
150 Federal Street
Boston, Massachusetts  02110

and

John L. Koenig, BBO #565620
McNamara Koenig & McCarthy, PC
65 Williams Street
Wellesley, Massachusetts  024381

RE:    *United States of America v. Zero Stage Capital VI, L.P.*,
       Case No. 05-10887 (JLT), USDC for the District of Massachusetts

Gentlepersons:

I have received the "Receivership Claim" of your client Zero Stage Capital Company, Inc. ("ZSC") against Zero Stage Capital VI LP ("Fund VI") dated January 19, 2006 for management fees and expenses aggregating $4,873,000.71.

Upon completion of it's preliminary review, the Receiver has found the documentation and other information provided in support of this claim to be significantly deficient. To allow the Receiver to properly review the substance and propriety of the ZSC claim, please provide us with copies of any and all documents, not already submitted with the claim, and other information supporting this claim including, but not limited to, the following:

1. Any and all documents and other information relied upon in support of the claim that accrued management fees of $7,941,477.00 minus waived fees of $4,016,141.29 or $3,925,335.71 of accrued fees are payable to ZSC by Fund VI;

2. Any and all documents, and other information relied upon in support of the apparent position that numbered paragraph 2 of the April 28, 2005 Resolution Agreement letter does not constitute an agreement to defer any balance of accrued management fees "until such time as SBA is paid in full Licensee's Participating Securities and all accrued Prioritized Payments";

3. Any and all documents and other information relied upon in support of the position that "the Management Agreement therefore contemplates that Zero Stage (ZSC) would pay such "Management Expenses" incurred in connection with management services provided to Fund VI (the "3(a) Expenses") from the earned Management Fee", whereas Section 3(a) actually calls for ZSC to bear all costs and expenses of providing the agreed services "without limitation";

4. Any and all documents and other information relied upon in support of the statement that "the allocation of expenses under section 3 of the management agreement is typical of the relationships established by SBIC companies and their investment advisors or managers";

5. Any and all documents and other information relied upon in support of the suggestion that ZSC participated in any way in the "liquidity events occurring after Zero Stage was moved into the Office of Liquidation that have resulted in approximately $14,906,743 in actual or prospective cash flowing into Fund VI...";

6. Any and all documents and other information evidencing the details of the reported comprehensive review of the managements of each Fund VI portfolio company and the internal monitoring of the investments by various ZSC personnel conducted by ZSC once Fund VI was found to be "in distress" and both were found to be lacking in material respects necessitating wholesale internal changes at ZSC;

7. Any and all documents and other information relied upon in support of the claim that Fund VI should reimburse ZSC for expenses incurred by ZSC in attempting to correct material deficiencies caused by ZSC in its performance under the terms of the Fund VI management Agreement;

8. Any and all documents and other information evidencing that "during the relevant period very minimal effort was expended on the other affiliated funds, and that at times well in excess of half, and at times close to all, of the firm's energies and resources were devoted to Fund VI";

9. Any and all documents and other information tabulating the management fees collected by ZSC from the other affiliated funds during this period;

2

10. Any and all documents and other information relied upon in support of the claim that section 3(a) expenses are "... "third party" or "out-of-pocket" expenses incurred by Zero Stage in providing management services to Fund VI", rather than normal fixed operating expenses of ZSC, for which ZSC is responsible under section 3(a) "without limitation";

11. Any and all documents and other information relied upon in support of the propriety of allocating portions of Section 3(a) expenses to Fund VI;

12. Any and all documents and other information relied upon in support of the reasonableness of the allocation percentages used in apportioning the aforesaid ZSC operating expenses to Fund VI;

13. Any and all documents and other information relied upon in support of the propriety of using the reimbursement of section 3(a) and section 3(b) expenses in fact as a partial reimbursement of the accrued management fees deferred under the terms of the April 28, 2005 Resolution Agreement;

14. Any and all documents and other information relied upon in support of the claim for Section 3(b) expenses for the years 2002 through May 2005, being consulting, legal and professional expenses and office supplies actually incurred by ZSC and allocated to Fund VI at rates ranging from 30%, through 60% to as high as 75%;

15. Any and all documents and other information relied upon in support of the propriety of allocating to Fund VI portions of Section 3(b) expenses, otherwise not directly chargeable to Fund VI;

16. Any and all documents and other information relied upon in support of the reasonableness of the allocation percentages used in apportioning the aforesaid Section 3(b) expenses to Fund VI;

17. Any and all additional documents and other information relied upon in support of apportioning Section 3(b) expenses to Fund VI, including detail support for whether said expenses "...were related to services provided for ZSC VI..." and for the "supporting detail and interviews with management" relied upon in determining the relevance and propriety of the allocation percentages;

18. Any and all documents and other information relied upon in support of the claim that "Zero Stage personnel have expended significant time and effort assisting the Receiver in taking over Fund VI";

19. Any and all documents and other information relied upon in support of the use of allocation percentages in determining amounts charged to Fund VI for "post-receivership expenses;

3

20. Any and all documents and other information relied upon in support of the reasonableness of the allocation percentages used in determining amounts charged to Fund VI for "post-receivership expenses;

21. Any and all documents and other information, not already provided, itemizing services requested by the Receiver and performed by ZSC for the receivership in assistance to the Receiver.

Please also provide a copy of the financial statements of ZSC as of a recent date and for the year ended December 31, 2005 and the interim period through a recent date.

Please provide this information as promptly as possible and in any event no later than March 15, 2006 to:

>Maurice J. Whalen
>Principal Agent for the Receiver
>U.S. Small Business Administration as Receiver
>   for Zero Stage Capital VI, L.P.
>666 Eleventh Street, N.W., Suite 200
>Washington, D.C. 20001
>Direct Dial: (202) 638-0902
>mwhalen@etnet.com

Failure to properly and timely respond to this request could cause the Receiver to recommend to the Court that this claim be denied. You should also remember that the Court has established January 20, 2006 as the claims bar date, and the Receiver has no power to extend it. Finally, it should be clearly understood that the mere receipt of a response to this request shall not cause the Receiver to recommend to the Court that all or any part of this claim be paid in full or in part.

Thank you.

Very truly yours,

U.S. SMALL BUSINESS ADMINISTRATION
   as Receiver for Zero Stage Capital VI, L.P.


By: _____
   MAURICE J. WHALEN
   Principal Agent for the Receiver

4

# EXHIBIT B

# McNamara Koenig & McCarthy, PC
### ATTORNEYS AT LAW

Telephone (781) 431-1700  
www.mkmlegal.com

65 WILLIAM STREET  
WELLESLEY, MASSACHUSETTS 02481

Facsimile (781) 237-8120

## MEMORANDUM

TO: Christopher P. Hines, Feeley & Driscoll, P.C.
FROM: T. Tedeschi
DATE: April 22, 2005
RE: Zero Stage Fund VI / SBA

---

As you requested, I am providing you with this memorandum to provide some additional context for your review of the Fund VI expense allocation being prepared by Zero Stage for submission to SBA. For a number of years I have been the primary independent attorney for Zero Stage Capital Company, Inc., and am familiar with its affiliated funds, management, personnel, and practices. In particular, I am intimately familiar with Fund VI, its impact upon the management and overhead of ZSC, and the efforts of the management company to salvage this problem fund.

My attention began to become increasingly focused on Fund VI in late 2002 and early 2003, when it became obvious that this fund was in distress. Among the matters that ZSC undertook was an immediate and comprehensive review of the (i) management of each portfolio company, and (ii) internal monitoring of the investments by various ZSC professionals. Both were found to be lacking in material respects, necessitating wholesale internal changes at ZSC, and a number of changes at the portfolio companies.

As to the latter, as ZSC was not in control of all of the companies, changes were complicated, difficult and very time-consuming. Such changes, to the (great) extent that they required internal changes at Zero Stage, were increasingly resource and time consuming over the period 2002-2005. During the relevant period, at Zero Stage, personnel changes were made to delete from the staff Brian Johnson (CFO), Ben Bronstein (a partner), Stan Fung (a partner), Frank Pinto (a partner), Bic Stevens, (a partner), and Ron Finlayson (consultant/venture advisor). Although these persons were not partners in Fund VI, the practice of the firm was to deploy all human resources from across the firm to the problem area, in this case Fund VI, and to root out the human and other identifiable causes of asset dysfunction and dislocation.

Numerous external and internal resources had to be brought to bear on the situation. I was personally involved in the substantial efforts to clarify, quantify, and remedy the problems with the Fund VI portfolio. During this entire period very minimal time and effort was expended on the other, non-problematic, affiliated funds (Fund V, Fund VII and its affiliates, and Penn Venture Partners). During this period some effort was devoted, almost exclusively by Matthew Kelley, to raising the next Zero Stage Fund. Thus, at most times during the period, well in excess of half, and at times close to all, of the firm's energies and resources were devoted to Fund VI. Certainly, third party expenses, such as consultants and attorneys, were very much skewed toward Fund VI.

Finally, I will personally review the figures prepared by for presentation to SBA by Mr. Carmisciano so that I can impart to you my sense of the reasonableness of the allocations to Fund VI. If you have any questions about this matter, please let me know.

# DUFFY SWEENEY & SCOTT, LTD
### BUSINESS LAW & LITIGATION

Stacey P. Nakasian
snakasian@duffysweeney.com

February 13, 2007

*Via Facsimile and First Class Mail*
John Koening, Esq.
McNamara Koening & McCarthy, PC
65 William Street
Wellesley, MA 02481

Re:   United States Small Business Administration v. Zero Stage Capital VI, L.P.
      05-10887 (D. Mass)

Dear Mr. Koening:

   Enclosed please find a Subpoena that has been issued in the above-referenced action by the Small Business Administration in its capacity as Receiver for Zero Stage Capital VI, L.P. Thank you for agreeing to accept service of the Subpoena by mail. If you have any questions please feel free to contact me.

Sincerely,

Stacey P. Nakasian

SPN/emh
Enclosures
cc:   Thomas W. Rigby, Esq.

One Turks Head Place, Suite 1200    Providence, RI 02903    401 455-0700    fax 401 455-0701
265 Franklin Street    Boston, MA 02110    617 261-9606    fax 617 261-9605

www.duffysweeney.com

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).